LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation, d/b/a METART d/b/a SEXART; HYDENTRA, L.P. HLP GENERAL PARTNER, INC, a foreign corporation, d/b/a METART d/b/a SEXART, <br><br> Plaintiffs, <br><br> vs. <br><br> SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; Netmedia Services Inc., a Canadian Company, individually and d/b/a Porn.com; DAVID KOONAR, an individual; and John Does 1-20, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiffs Hydentra L.P. HLP General Partner, Inc., d/b/a Metart, d/b/a Sexart; Hydentra HLP Int. Limited, d/b/a Metart, d/b/a Sexart; (hereinafter referred to as "Plaintiffs") by and through its counsel, file this complaint against Defendant Sagan Limited individually and d/b/a Porn.com, MXN, Ltd., individually and d/b/a Porn.com, Netmedia Services Inc. individually and d/b/a Porn.com, David Koonar, and the Doe Defendants (collectively hereinafter referred to as "Defendant" or "Defendants").

**JURISDICTION AND VENUE**

1.      Plaintiff Hydentra L.P. HLP General Partner, Inc. is a foreign corporation organized under the laws of Cyprus, with offices located in Los Angeles, California.

2.      Plaintiff Hydentra HLP Int. Limited is a foreign corporation organized under the laws of Cyprus, with offices located in Los Angeles, California.

3.      Defendant Sagan Limited is, upon information and belief, a company organized and existing under the laws of the Republic of Seychelles. Upon information and belief, in conjunction with the other Defendants, Sagan Limited owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

4.      In September 2013, Sagan Limited filed an Interim Designation of Agent to Receive Notification of Claimed Infringement with the United States Copyright Office, claiming to be doing business as Porn.com.  This Designation is current as of this filing.

5.      Defendant MXN Ltd is a company organized in Barbados.  Upon information and belief, in conjunction with the other Defendants, MXN Ltd. owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

6.      Upon information and belief, Defendant MXN Ltd. purchased the domain porn.com at auction in 2007.  In 2014, Defendant MXN Ltd. filed a UDRP complaint, claiming ownership of the domain.

7.      Defendant Netmedia Services Inc. is a company organized in Canada. Upon information and belief, in conjunction with the other Defendants, Netmedia Services Inc. owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

8.      Defendant David Koonar is an individual residing in Windsor, Ontario, Canada, believed to also be known as Kristoffer David Koonar and David Kooner.

Defendant Koonar has been listed as the registrant for Porn.com and the administrator for Porn.com.  Upon information and belief, in conjunction with the other Defendants, David Koonar owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

9.     Reflected Networks, Inc. in Waltham, Massachusetts hosts Porn.com in the United States.

10.    Porn.com utilizes the services of Tempe, Arizona based company Limelight Networks, Inc.  Limelight Networks, Inc. serves as the content delivery network that delivers the infringing video content from the porn.com website to end users.

11.    The largest portion of Porn.com viewers are in the United States.

12.    Defendants conduct transactions in the United States, selling premium paid memberships to Porn.com to United States citizens including Arizona residents.

13.    Defendants utilize United States payment processors, including Epoch, located in Santa Monica, California, to process credit card payments for premium memberships on Porn.com.  California based Epoch also facilitates payment for premium memberships to Porn.com for PayPal, Inc., a company based in San Jose, California.

14.    The Terms and Conditions of the Premium Subscription to Porn.com states that the Agreement shall be governed by and construed under the laws of the State of California and the United States.

15.    Defendants contract directly and through brokers with United States advertisers.  Defendants' websites specifically target Arizona and other United States residents with ads designed for the visitor and which take into consideration where the visitor is located.

16.    Defendants utilize an agent in Michigan for purposes of receiving cease and desist, or takedown, notices regarding infringement of intellectual property on their web site Porn.com.

17.    Defendants, by and/or through subsidiaries, contract with Arizona based companies and individuals to deliver content for their web properties.

18.    Defendants, its employees, and/or its agents travel to Arizona to transact business on behalf of Defendants.

19.    Defendants specifically target Internet users throughout the entire United States, including Arizona.

20.    Defendants refer Porn.com users to several United States based companies for assistance in limiting minors' access to adult entertainment content via the user's computer.

21.    Upon information and belief, the Defendants all transact business in this Judicial District by way of their interactive websites, offices, business operations, and through their interactivity with subscription based and non-subscription based Arizona members who have been offered the infringing and unlawful content at issue herein and who have, themselves, engaged in acts of infringement in this District and State.  The Court has personal jurisdiction over the Defendants, who have engaged in business activities in and directed to this district, and have committed tortious acts within this district or directed at this district.

22.    Upon information and belief, the Defendants all transact business in this Judicial District by way of their interactive websites, offices, business operations, and through their interactivity with subscription based and non-subscription based Arizona members who have been offered the infringing and unlawful content at issue herein and who have, themselves, engaged in acts of infringement in this District and State.  The Court has personal jurisdiction over the Defendants, who have engaged in business activities in and directed to this district, and have committed tortious acts within this district or directed at this district.

23.    The Court has personal jurisdiction over the Defendants, foreign companies and individuals who have engaged in business activities in and directed to the United States and this district, and have committed tortious acts within the United States and this district or directed at the United States and this district.

24.    Any alien defendant is subject to jurisdiction in any district. See 28 U.S.C. 1391 ("An alien may be sued in any district.") See also Fed. R. Civ. P. 4(k)(2).

25.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 17 U.S.C. § 101 et seq., Section 32 of the Lanham Act, 15 U.S.C. §1114(1), 15 U.S.C. § 1121, 15 U.S.C. §1125, 28 U.S.C. §1331 and 28 U.S.C. §1338.

26.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and/or (c).

27.    This Court has personal jurisdiction pursuant to 28 U.S.C. §§ 1391(b), (c) and/or (d) and 28 U.S.C. § 1400(a).

## PARTIES

28.    The named Plaintiffs are the rightful copyright, trademark and intellectual property owners of the respective United States copyrights, trademarks and intellectual property that are the basis for this action.

29.    Plaintiffs, more commonly known as the MetArt Network of adult entertainment properties, is a group of award winning erotic websites that explore and deliver sensuality and sexuality through artistic photography, video, erotic stories, and through articles about beauty, culture, and nudity.  These websites include MetArt.com, SexArt.com,    Errotica-Archives.com,    EroticBeauty.com,    TheLifeErotic.com, RylskyArt.com, ALSScan.com, VivThomas.com, EternalDesire.com, Stunning18.com, HollyRandall.com,  domai.com,  goddessnudes.com,  and  bbfilms.com.  Since  1999, Plaintiffs have grown their trademark brands into a globally recognized leader of sensual art garnering numerous industry awards through the use of studios around the globe,

- 5 -

exotic locations, high budget productions, engaging storylines, famed photographers and directors coupled with the dedication from its artists and technicians.

30.     The MetArt library is comprised of exclusive content that features over 5000 models shot by 250 photographers/directors including such notables as Vivian Thomas and the late Zalman King, who also brought Hollywood films such as Wild Orchid, Two Moon Junction, 9 ½ Weeks, and the Showtime network groundbreaking series Red Shoes Diaries.

31.     The MetArt websites are paid membership sites.  MetArt engages in extremely limited licensing of its content to other entities or websites for viewing, in addition to the small sample of promotional materials provided to MetArt affiliates for the sole purpose of the affiliates' promoting MetArt property.  Any licensing is done with the intent for brand exposure and is limited to a small subset of hand-selected content. Predominantly, the MetArt business model is simply that a user must be a paid member to a MetArt site to view MetArt's works.

32.     Plaintiffs are the respective producer, distributor, and exclusive licensor of their own motion pictures in the United States as well as throughout the world.

33.     Plaintiffs have registered with the United States Copyright Office the copyrighted works identified in this Complaint.  Plaintiffs have taken industry standard steps to identify its products.  Plaintiffs' videos and photographs are watermarked with Plaintiffs' readily identifiable logo.

34.     Plaintiffs' MetArt trademark and service mark have been continuously used in commerce since May 2002.  U.S. Trademark Registration No. 3152759 was registered on October 10, 2006.

35.     Plaintiffs have expended considerable effort and expense in promoting their trademark and the goods sold under the trademark MetArt.  As a result, the purchasing

public has come to know, rely upon and recognize the mark MetArt as an international brand of high quality adult entertainment.

36.     Plaintiffs' SexArt trademark and service mark have been continuously used in commerce since April 2011.  U.S. Trademark Registration No. 4191754 was registered on August 14, 2012.

37.     Plaintiffs have expended considerable effort and expense in promoting its trademark and the goods sold under the trademark SexArt.  As a result, the purchasing public has come to know, rely upon and recognize the mark SexArt as an international brand of high quality adult entertainment.

38.     Defendants Sagan Limited, MXN Ltd., Netmedia Services Inc., and David Koonar are each owners and/or operators of Porn.com and/or are doing business as Porn.com.

39.     Defendants conduct business as Porn.com, operate the website, and derive direct financial benefit through the sales of Premium memberships on Porn.com, at a rate of $19.95 per month or a yearly membership for $119.95.

40.     Defendants conduct business as Porn.com, operate the website, and derive direct financial benefit through the sales of advertising space on Porn.com, the value of which is directly attributed to the quality of videos posted on Porn.com.

41.     Defendants compete against Plaintiff in the distribution, display, and sale of adults-only audio-visual works through Internet distribution and divert potential customers from Plaintiff.

42.     Defendants have registered Porn.com as an Internet Service Provider with the United States Copyright Office, and appointed an agent to receive copyright take down notices.  However, Defendants fail to qualify for safe harbor protections under the Digital Millennium Copyright Act for reasons of the factual allegations herein.

43.   Does 1-20 are individuals or entities that own Porn.com and/or act in concert with the owners and operators of Porn.com the true names and capacities of which are presently unknown to Plaintiff.  It is for that reason Plaintiff sues these Defendants by fictitious names. Plaintiff avers that each of the Doe defendants, along with the named defendant, jointly or severally, is responsible for the damages alleged herein.

**STATEMENT OF FACTS**

44.   Congress' implementation of safe harbor provisions in the Digital Millennium Copyright Act ("DMCA") provides true internet service providers with protection against liability for copyright infringement resulting from the actions and/or postings of their users.  As a primary example, the safe harbor protections provide YouTube.com with protection from liability should one of its users post a copyright protected video without authority or license.

45.   Internet copyright infringers have systematically abused the DMCA safe harbor provisions in an attempt to garner protection for websites displaying copyrighted adult entertainment content without license or authority to the public free of charge or through a paid mechanism for direct financial gain.  Commonly, these websites attract Internet user attention through the combination of offering free viewing of copyrighted materials and the unauthorized use of trademarks, providing the user a road to the free website through the use of these marks.  From this road, sites can then up sale other offerings including paid memberships for enhanced versions of their site and further monetize their site through advertising revenue.

46.   Porn.com is such a website and more, not only displaying copyrighted adult entertainment content but also selling specific rights and granting licenses to the content without authorization or license. These actions attract millions of users and distract them from the copyright owners' actual services.

47.     Similarweb reports that Porn.com receives 63.1 Million visits per month, 21.43% of those visitors are from the United States. Germany is a far second place with 7.59%.[1] The Porn.com business model successfully attracts over 162,000,000 United States based viewers to its website per year.[2]

48.     Defendants sell advertising space on Porn.com in several forms, including advertising banners and links on spaces in close proximity to free videos. Often, these advertisements are targeted to the user in the user's location.

49.     Defendants, either jointly, severally, actually, constructively, and with or without direct concert with one another, deprived Plaintiffs of the lawful monetary rewards that accompany its rights in the copyrighted works. Defendants disregard for copyright laws threaten Plaintiff's business.

50.     Videos on Porn.com may be shared on other sites, in addition to the user being provided with direct links for posting on or to any social media site including, but not limited to, Facebook, Twitter, Google or via Email to anyone regardless of age or location. Such functionality makes it impossible to know how many times and where an unlicensed copyrighted video has been posted and displayed illegally as a direct result of Defendants unlawful display.

51.     Defendants claim to operate Porn.com as an Internet Service Provider. However, Porn.com is not an Internet Service Provider. Rather, Porn.com is a paid membership site, with Defendants enticing users to pay for Premium memberships, called HD Premium memberships, at a rate of $19.95 per month or a yearly membership for $119.95.

---

[1] SimilarWeb is a premier web analytics company whose clients include PayPal and eBay Inc.
[2] As a matter of perspective, according to the Themed Entertainment Association and as published in the Orlando Sentinel, 148,341,000 visitors visited Disney theme parks in 2014. More US visitors go to Porn.com per year then attend ALL Disney Theme Parks worldwide (Source: http://www.orlandosentinel.com/travel/attractions/the-daily-disney/os-disney-parks-worldwide-attendance-2015-story.html - Last Visited 05/06/2016)

52.     Defendants advertise that HD Premium members receive "Stunning High Definition Video," "Browse 100% Ad-Free," and can "Download videos, DVDs, and pictures to keep." In addition, Defendants advertise that Premium Members get access to the "best sites and studios in HD."

53.     Defendants permit a user to view lower quality versions of videos on Porn.com free of charge. Porn.com charges a fee to view the High Definition ("HD") versions of videos.

54.     At the time the infringements herein were discovered, if a user of Porn.com attempted to watch one of Plaintiff's full-length infringed copyrighted videos in HD, the user was immediately redirected to the join page to become a paying Premium Member of Porn.com.

55.     At the time that the infringements herein were discovered, if a user of Porn.com attempted to download the HD or any other version of Plaintiff's copyrighted videos, the user was prompted to become a paying Premium Member of Porn.com, informing the user that they, "need to be a premium member to do that," and a price menu for Premium Membership was displayed.

56.     A user is unable to download a video, view a high definition video, or view Porn.com wholly unencumbered, uninterrupted, and/or unaccompanied by advertisements without first joining Porn.com.

57.     In furtherance of the claim that Porn.com is operated as an Internet Service Provider, Defendants claim that videos available on Porn.com are uploaded by independent third parties.  However, based upon information and belief, and facts alleged herein, videos, or the bulk of the videos on Porn.com are misrepresented as third party uploads.  In fact, the videos displayed on Porn.com are a result of operators of the web site and/or agents of the Defendants posting professionally produced videos obtained from other locations.

58.     Based on information and belief, the Defendants or its Agents or assigns are "scraping" user profiles and video content from similar high trafficked sites including Xvideos.com[3].

59.     This effort of using "scraped" fake profiles allows a site to provide more high quality video content to their end users while maintaining the appearance that an army of third parties uploaded a vast library of professionally shot content in a concentrated period. The result for the Defendant is a more desirable web property as it generates more traffic that translates into increased revenue from advertising rates and paid memberships. The game works in such a way that the Defendants can simply wait for a DMCA Notice, remove the content and act "as if" it was a third party upload. The site appears to be DMCA compliant but is in actuality forcing content producers to play a sad game of, "catch me if you can."

60.     According to the Terms of Service on Porn.com, a user must be registered as a member of Porn.com in order to be able to upload videos.   Registering as a member to Porn.com is different from paying a membership fee to gain Premium access. Registering as a member does not require the payment of money, but only requires establishing a user name, a password, and a providing an email address.

61.     When a user registers to become a member of Porn.com, they are subsequently approved, and a dedicated "profile page" is created for that registered user on Porn.com, which shows basic information including information the registered member voluntarily disclosed to the website as well as on any videos they uploaded.

---

[3] Amazon owned Alexa.com ranks websites, "based on data from our global traffic panel." (Source: http://www.alexa.com/about). Alexa ranks the website Xvideos.com with a global rank of 53 (Source: http://www.alexa.com/siteinfo/xvideos.com - Last viewed 03/29/2016) and Porn.com with a global rank of 1,143 (Source: http://www.alexa.com/siteinfo/porn.com - Last viewed 03/29/2016).

62.     Videos posted on Porn.com are to be accompanied by the user name for the user that uploaded the video, also referred to as the "uploader" on the webpage where the video is displayed.

63.     The "uploader" information, which accommodates a video, is a clickable link, which will then take any end user, registered or not, to that uploader's profile page. This is a common practice in this entire category of websites, as well as in sites like Youtube.com, and others.

64.     For certain videos displayed on Porn.com, represented to be third party uploads, the user associated as the uploader of the video is actually *not* registered as a member of Porn.com.  The association of a user name that is *not* registered as a member illustrates that these videos are not uploaded by independent third parties, but by the operator and then assigned a user name as a ruse to disguise the origination of the video.

65.     In or about November 2015, and for an unknown time before and up to and including the present, Defendants' website Porn.com displayed four (4) of Plaintiff's copyright registered works over four (4) separate and distinct URLs  - each a part of Porn.com.  Defendants have no authority, license to display, or distribute any portion of Plaintiffs' copyrighted works.  These works are purported by Defendants to have been uploaded by third party Internet users. These copyrighted works and their corresponding Porn.com page are listed in **Exhibit A** attached hereto.

66.     Three (3) of Plaintiff's videos posted on Porn.com are accompanied by a user name represented to be the uploader.  However, a search on Porn.com for these user names resulted in the display of a dedicated page those user names that stated that that there is "**No Such Member**" or user on Porn.com.  Attached hereto as **Exhibit B** is a summary list of Plaintiff's videos on Porn.com displayed with uploader information that resulted in a finding of "No Such Member."

67.     The failure to attach accurate uploader information to a posted video renders the implementation of a reasonable repeat infringer policy impossible.  Without accurate uploader information, an uploader that repeatedly infringes copyrights cannot be properly terminated.

68.     Without accurate uploader information regarding Plaintiff's copyrighted videos, Defendants cannot have a reasonable belief that a license was granted for Defendant's display, use of, or financial gain from the use of Plaintiffs intellectual property.

69.     Defendants "scrape", or aggregate on their own, user information and videos from other websites in the industry, and then create the façade that those users exist on their own website and uploaded the videos to Defendants' websites directly.

**70.**     One of Plaintiff's videos posted on Porn.com displays a user name that appears to be a member of Porn.com, complete with a dedicated profile page that includes a date of birth, and date the user joined Porn.com.  Curiously, *the Porn.com User has identical information found on a dedicated profile page on the website Xvideos.com. This information includes the same signup date to each site, and identical geographic location, and videos in identical order of presentation*. Attached hereto as **Exhibit C** is a summary list of the Porn.com member and the comparative on Xvideos.com.

**71.**     Any person can browse to one of Plaintiff's infringed videos on Porn.com, which was uploaded by Defendants, and subsequently assigned false uploader information.

**72.**     If the user wants to download the High-Definition version of Plaintiff's infringed video, the user would then be prompted to purchase a membership to Defendant's Porn.com Premium section in order to do so.

73.     Defendants also hand select and curate some of Plaintiff's copyrighted images for use throughout the Porn.com website without Plaintiff's authorization or consent.

74.     Defendants operate multiple corporate entities that exploit large-scale copyright infringement for its own financial gain.

## COUNT I
### Copyright Infringement – 17 U.S.C. §§ 101 *et. seq.*
#### Against All Defendants

75.     Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 69 above, and further states that:

76.     Plaintiffs hold the copyright on each of the infringed works alleged herein.

77.     Plaintiffs registered each copyright with the United States Copyright Office.

78.     At all pertinent times, Plaintiffs are the producers and registered owner of the audiovisual works illegally and improperly reproduced and distributed by Defendants.

79.     Defendants copied, reproduced, reformatted, and distributed Plaintiffs' copyrighted works to Porn.com by and through servers and/or hardware owned, operated and/or controlled by Defendants.

80.     Defendants did not have authority or license to copy and/or display Plaintiffs' original works.

81.     Defendants infringed Plaintiffs' copyrighted works by reproducing and distributing works through Defendants' website Porn.com without proper approval, authorization, or license of Plaintiffs.

82.     Defendants knew or reasonably should have known they did not have permission to exploit Plaintiffs' works on Porn.com and further knew or should have known their acts constituted copyright infringement.

83.     Defendants made no attempt to discover the copyright owners of the pirated works before exploiting them.  Defendants failed and refused to take any reasonable measure to determine the owner or license holder of the copyrighted works.

84.     Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of Plaintiffs' copyrighted works.

85.     The quantity and quality of copyright files available to Internet users increased the attractiveness of Defendants' service to its customers, increased its membership base, and increased its advertising sales revenue.

86.     Based on information and belief, Defendants actively uploaded and/or distributed pirated copyrighted files and/or embedded code, enabling users of Porn.com to view copyrighted videos and images for a fee.

87.     Defendants controlled the files owned by Plaintiffs and determined which files remained for display and distribution.

88.     Defendants never adopted procedures to ensure that distribution of Plaintiffs' copyrighted materials would not occur.  Further, Defendants never implemented or enforced a "repeat infringer" policy.

89.     Defendants either were aware, actually or constructively, should have been aware, or were willfully blind that pirated copyrighted materials comprised the most popular videos on the Defendants websites.

90.     Defendants, through Porn.com, affirmatively and willfully accommodated Internet traffic generated by the illegal acts.

91.     Defendants' conduct was willful within the meaning of 17 U.S.C. § 101, *et seq.*  At a minimum, Defendants acted with willful blindness and reckless disregard of Plaintiff's registered copyrights.

92.    Because of their wrongful conduct, Defendants are liable to Plaintiffs for copyright infringement. See 17 U.S.C. §501. Plaintiffs suffer and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

93.    The law permits Plaintiffs to recover damages, including readily ascertainable direct losses and all profits Defendants made by their wrongful conduct. 17 U.S.C. §504. Alternatively, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).17 U.S.C. §504(c).

94.    Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. §504(c) (2).

95.    The law permits Plaintiffs injunctive relief. 17 U.S.C. §502. Further, the law permits a Court Order impounding any and all infringing materials. 17 U.S.C. §503.

WHEREFORE, Plaintiffs Hydentra L.P. HLP General Partner, Inc., d/b/a Metart, d/b/a Sexart; Hydentra HLP Int. Limited, d/b/a Metart, d/b/a Sexart request the following relief:

A.    That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)    Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)    Permitting any user to upload for reproduction, adaptation, public

display and/or distribution of copies of the Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)     Marketing or selling any product containing or utilizing Plaintiffs' intellectual property or business values.

B.     That Defendants be ordered to transfer the domain Porn.com and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com, and the content therein to Plaintiffs.

C.     That Defendants be ordered to file with the Court and serve upon Plaintiffs, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.     That Plaintiffs be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiffs' damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.     That Defendants be ordered to account to Plaintiffs for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiffs' copyrighted works;

F.     That Plaintiffs be awarded enhanced statutory damages and attorney's fees;

G.     That Plaintiffs be awarded pre-judgment and post-judgment interest;

H.     That Plaintiffs be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.     That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

**COUNT II**
**Contributory Copyright Infringement**
**Against All Defendants**

96.    Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 69 above and further states that:

97.    Unknown individuals, without authorization, reproduced and distributed Plaintiffs' works through Defendants' websites, directly infringing Plaintiffs' copyrighted works.

98.    Defendants contributed to the infringing acts of those individuals.

99.    Defendants were aware, should have been aware, or were willfully blind to the infringing activity.

100.    Defendants aided, abetted, allowed, and encouraged those individuals to reproduce and distribute Plaintiffs' copyrighted works through Defendants' website without regard to copyright ownership.

101.    Defendants had the ability and obligation to control and stop the infringements.  Defendants failed to do so.

102.     Defendants have engaged in the business of knowingly inducing, causing, and/or materially contributing to unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiffs' copyrighted works, and thus to the direct infringement of Plaintiffs' copyrighted works.

103.    Defendants received direct financial benefits from the infringements.

104.    On information and belief, Defendants' actions constitute contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright in the Plaintiffs' copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

105.    The unauthorized reproduction, distribution, and public display of Plaintiffs' copyrighted works that Defendant enables, causes, materially contributes to

and encourages through the acts described above are without Plaintiffs' consent and are not otherwise permissible under the Copyright Act.

106.   The acts of infringement by Defendants have been willful, intentional, and purposeful and in reckless disregard of and with indifference to Plaintiffs' rights.

107.   As a direct and proximate result of the infringements by Defendants of Plaintiffs' copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiffs are entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

108.   Alternatively, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

109.   Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiffs Hydentra L.P. HLP General Partner, Inc., d/b/a Metart, d/b/a Sexart; Hydentra HLP Int. Limited, d/b/a Metart, d/b/a Sexart, d/b/a Metart, d/b/a Sexart, request the following relief:

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)   Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)   Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)     Marketing or selling any product containing or utilizing Plaintiffs' intellectual property or business values.

B.     That Defendants be ordered to transfer the domain Porn.com and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com and the content therein to Plaintiffs.

C.     That Defendants be ordered to file with the Court and serve upon Plaintiffs, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.     That Plaintiffs be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiffs' damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.     That Defendants be ordered to account to Plaintiffs for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiffs' copyrighted works;

F.     That Plaintiffs be awarded enhanced statutory damages and attorney's fees;

G.     That Plaintiffs be awarded pre-judgment and post-judgment interest;

H.     That Plaintiffs be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.     That such other and further preliminary and permanent relief be awarded to Plaintiffs as the Court deems appropriate.

/ / /

/ / /

/ / /

## COUNT III
## Vicarious Copyright Infringement
### Against All Defendants

110.   Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 69 above and further states that:

111.   Without authorization, individuals reproduced, distributed, and publicly displayed Plaintiffs' works through Defendants' website, directly infringing Plaintiffs' copyrighted works.

112.   Defendants were actually or constructively aware or should have been aware or were willfully blind to the infringing activity.

113.   Defendants were able to control or completely end the illegal and improper infringement, but failed to do so.

114.   Defendants contributed materially to the infringement.

115.   Defendants received direct financial gain and profit from those infringing activities.

116.   The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

117.   The acts of infringement by Defendants have been willful, intentional, and purposeful and in reckless disregard of and with indifference to Plaintiffs' rights. As a direct and proximate result of the infringements by Defendants of Plaintiffs' copyrights and exclusive rights under copyright in the Plaintiffs' copyrighted works, Plaintiffs are entitled to their actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

118.   Alternatively, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

119.   Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiffs Hydentra L.P. HLP General Partner, Inc., d/b/a Metart, d/b/a Sexart; Hydentra HLP Int. Limited, d/b/a Metart, d/b/a Sexart, d/b/a Metart, d/b/a Sexart, request the following relief:

A.     That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)     Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)     Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)     Marketing or selling any product containing or utilizing Plaintiffs' intellectual property or business values.

B.     That Defendants be ordered to transfer the domain Porn.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com, and the content therein to Plaintiffs.

C.     That Defendants be ordered to file with the Court and serve upon Plaintiffs, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.     That Plaintiffs be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiffs' damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all

from the date of first infringement;

E.      That Defendants be ordered to account to Plaintiffs for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiffs' copyrighted works;

F.      That Plaintiffs be awarded enhanced statutory damages and attorney's fees;

G.      That Plaintiffs be awarded pre-judgment and post-judgment interest;

H.      That Plaintiffs be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.      That such other and further preliminary and permanent relief be awarded to Plaintiffs as the Court deems appropriate.

**COUNT IV**
**Inducement of Copyright Infringement**
**Against All Defendants**

120.    Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 69 above and further states that:

121.    Defendants designed and/or distributed technology and/or devices and/or induced individuals to use this technology to promote the use of infringed and copyrighted material. As a direct and proximate result of Defendants' inducement, individuals infringed Plaintiffs' copyrighted works. These individuals reproduced, distributed and publicly disseminated Plaintiffs' copyrighted works through Defendants' website.

122.    On information and belief, Defendants have encouraged the illegal uploading and downloading of Plaintiffs' copyrighted works, thus inducing the unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiffs' copyrighted works, and thus to the direct infringement of Plaintiffs' copyrighted works.

123.   Defendants' actions constitute inducing copyright infringement of Plaintiffs' copyrights and exclusive rights under copyright in the Plaintiffs' copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

124.   The infringement of Plaintiffs' rights in and to each of the Plaintiffs' copyrighted works constituted a separate and distinct infringement.

125.   The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiffs' rights.

126.   As a direct and proximate result of the infringements by Defendants of Plaintiffs' copyrights and exclusive rights under copyright in the Plaintiffs' copyrighted works, Plaintiffs are entitled to actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

127.   Alternatively, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

128.   Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiffs Hydentra L.P. HLP General Partner, Inc., d/b/a Metart, d/b/a Sexart; Hydentra HLP Int. Limited, d/b/a Metart, d/b/a Sexart, d/b/a Metart, d/b/a Sexart, request the following relief:

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)   Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com;

- 24 -

(2)   Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiffs' copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)   Marketing or selling any product containing or utilizing Plaintiffs' intellectual property or business values.

B.   That Defendants be ordered to transfer the domain Porn.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com and the content therein to Plaintiffs.

C.   That Defendants be ordered to file with the Court and serve upon Plaintiffs, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.   That Plaintiffs be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiffs' damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.   That Defendants be ordered to account to Plaintiffs for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiffs' copyrighted works;

F.   That Plaintiffs be awarded enhanced statutory damages and attorney's fees;

G.   That Plaintiffs be awarded pre-judgment and post-judgment interest;

H.   That Plaintiffs be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.   That such other and further preliminary and permanent relief be awarded to Plaintiffs as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 16th day of May, 2016.

MANOLIO & FIRESTONE, PLC

By:   /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*