Evan Fray-Witzer (#564349)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com
*Pro Hac Vice Pending*

Valentin D. Gurvits (# 643572)
Boston Law Group, LLP
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
*Pro Hac Vice Forthcoming*

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Hydentra HLP INT. Limited, a foreign corporation, d/b/a METART d/b/a SEXART; Hydentra, L.P. HLP General Partner, Inc., a foreign corporation, d/b/a METART d/b/a SEXART,<br><br>Plaintiffs,<br><br>v.<br><br>Sagan Limited, a Republic of Seychelles company, individually and d/b/a Porn.com; MXN LTD., a Barbados Company, individually and d/b/a Porn.com; Netmedia Services Inc., a Canadian Company, individually and d/b/a Porn.com; David Koonar, an individual,<br><br>Defendants, | Case No. CV-16-1494-PHX-DKD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **MOTION FOR ALTERNATIVE SERVICE ON DEFENDANTS** |

"It's like déjà vu all over again."

-- Yogi Berra

### Introduction[1]

We've seen this vaudeville act before and (spoiler alert), we know how it ends.

Plaintiff Hydentra, a foreign company incorporated in the Republic of Cyprus, first set up tent in the Southern District of Florida, where it filed five near-identical frivolous lawsuits,[2] most of which named only foreign companies and individuals as defendants (as is the case here).  One of those cases was dismissed by the Court on a motion to dismiss when the judge found that there were absolutely no minimum contacts with the United States that would allow the Court to exercise personal jurisdiction over the foreign defendants;[3] another was dismissed at summary judgment when the Court found Hydentra's claims to be so lacking in merit as to require judgment as a matter of law.[4]  Faced with these dual defeats, Hydentra then voluntarily dismissed two more of its actions.[5]

---

[1] The Defendants appear for the limited purpose of Opposing Plaintiffs' Ex Parte Motion for Alternative Service.  Defendants do not waive (and specifically preserve) their right to object to personal jurisdiction in this Court.  Indeed, Defendants specifically note that, if and when service of process is effectuated in this case, they will move to dismiss on personal jurisdiction grounds.

[2] *Hydentra HLP Int. Ltd v. Luchian, et al.*, Docket No. 15-CV-22134-UU; *Hydentra HLP Int. Ltd. V. Maximum Apps., Inc.*, Docket No. 15-CV-22463-MGC; *Hydentra, L.P. HLP Geeral Partner, Inc. v. Mindgeek, USA Inc.*, Docket No. 15-CV-23230-KMW; *Hydentra, L.P. HLP Geeral Partner, Inc. v. ERA Technologies, Ltd.*, 15-CV-24293-MGC; *Hydentra, L.P. HLP Geeral Partner, Inc. v. Siracusa Management, S.A.*, 16-CV-20191-RNS.

[3] *See* Exhibit 1 ("The non-resident defendants here -- and it's kind of interesting and was pointed out… nobody's from here, including the plaintiff.  They didn't purposely avail themselves of this forum. They're here because plaintiffs made them come here. There's none of the traditional minimal contacts that would make us think that it would be appropriate for the defendants to be sued here.  There's no evidence of an intentional tort aimed at this state that the defendant would use to cause harm to people here, it's just not evident.  Would it create a burden on the defendant? Obviously, they're not here. Does Florida have any interest in adjudicating the case here? Nope.")

[4] *See* Exhibit 2.

[5] Hydentra voluntarily dismissed the fifth case as well – having discovered that it had made a huge mistake in initiating suit against an entity that had enough resources not only to defend itself against Hydentra's frivolous claims, but also to threaten counterclaims as well.  *See* Exhibit 3.

2

Not yet willing to completely abandon the Sunshine State, Hydentra then filed two frivolous appeals with the Eleventh Circuit Court of Appeals.[6] Hydentra voluntarily dismissed one of those appeals before filing an opening brief and simply failed to file a brief in the second, allowing it to be dismissed administratively.

Hydentra then pulled up stakes, packed its caravan of snake oil, and took its show on the road. Apparently, it now hopes that the District Court of Arizona will prove a more hospitable locale to peddle its wares, again bringing frivolous claims against foreign defendants with no connection to this forum. Moreover, Hydentra seems to believe that it has found a court that will allow it to ignore the Hague Convention and the requirements of the Federal Rules of Civil Procedure whenever it finds such rules to be inconvenient.

This Court should be hesitant to allow Hydentra to set up shop (lest this District become the next hub for frivolous pornography-related copyright litigation) and certainly it should not allow Hydentra to short-circuit the usual requirements of international service of process to do so. In support of its opposition to Plaintiffs' Ex Parte Motion for Alternative Service, Defendants state as follows.

**Procedural History**

Plaintiffs (themselves foreign corporations) filed the present case on May 16, 2016 naming three foreign corporations and one foreign individual as defendants. Docket No. 1. On May 18, 2016, this Court issued summonses for all defendants. Docket No. 7.

---

[6] *Hydentra HLP Int. Limited v. Maximum Apps Inc., et al*, Docket No. 16-13087; *Hydentra HLP Int. Limited v. Constantin Luchian, et al*, 16-14813.

3

According to the Plaintiffs, on some unspecified date, they "arranged for service through the Hague" in some unstated manner, utilizing unidentified "process servers." *See* Declaration of Spencer D. Freeman, Docket No. 12-1. Indeed, other than this ill-defined purported attempt to start the process of service, the Plaintiffs were content to wait for four months until this Court issued its Order to Show Cause on September 6, 2016 (Docket No. 9). In light of this inaction, Plaintiffs' current concerns as to potential delay ring hollow.

Plaintiffs state further that they have had settlement discussions with the Defendants' counsel and, in the course of those discussions, they asked counsel to accept service of process on behalf of the defendants. According to Plaintiffs' Motion, "Defense counsel rejected cooperation, citing contested 'U.S. jurisdiction' as the excuse." Motion, p. 3. In reality, although counsel did mention contested jurisdiction, she also made clear that she simply had not been authorized by her clients to accept process on their behalf. *See* Docket 12-2, p. 6.

## **Argument**

I. **The Plaintiffs Should be Required, in the First Instance, To Effectuate Service Pursuant to the Hague Convention.**

Although it is certainly true that this Court possesses the ability to allow *certain* avenues of alternative service of process pursuant to Fed. R. Civ. P. 4(f)(3), it is also true that concerns of foreign comity and respect for international treaties counsels that the Court should, at a minimum, require the Plaintiffs to first attempt service on the Defendants through the Hague Convention. *C & F Sys., LLC v. Limpimax, S.A.*, 2010 U.S. Dist. LEXIS 973, 5-7 (W.D. Mich. 2010).

4

It is for this reason that some federal courts have interpreted Rule 4(f) to impose at least minimal requirements on the Plaintiff to demonstrate a need for alternative service. *Ortiz v. Green Bull, Inc.,* 2011 U.S. Dist. LEXIS 131598 (E.D.N.Y. 2011)("Thus, the Court finds that the Plaintiff has not satisfied its burden of showing that service on Green Bull by serving Chris Prentice or Thomas Greco would be impracticable so that it would warrant granting leave to serve Green Bull by alternative means"); *Progressive Southeastern Ins. Co. v. J & P Transp.*, 2011 U.S. Dist. LEXIS 73946 (N.D. Ind. 2011)(denying alternative service where Plaintiff failed to first use "reasonable diligence" in attempting traditional service); *Henry v. Black*, 2011 U.S. Dist. LEXIS 11473 (D. Utah 2011)(denying alternative service where "it appears that Plaintiff has taken no efforts to locate Defendant, let alone reasonably diligent efforts"); *Alvarez v. County of Maricopa,* 2010 U.S. Dist. LEXIS 62121, 32-33 (D. Ariz. 2010)("Plaintiff has made only one attempt to serve Ava Arpaio, and the Court does not find that this is sufficient to show that personal service is impracticable.")

The *Limpimax* case is particularly on point. There, the Court was also presented with a Plaintiff who wished to bypass the service requirements of the Hague Convention in favor of alternative means. There, the Court held that:

> Plaintiff wishes to skip the express provisions of subsections (1) and (2) of Rule 4(f), in favor of the catchall provision allowing the court to order service "by other means not prohibited by international agreement" under Fed. R. Civ. P. 4(f)(3). This provision "serves as a safety valve for unanticipated situations . . . ." *4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE* § 1133 at 313 (3d ed. 2002). "Rule 4(f)(3) is most likely to be employed when a foreign country's Central Authority fails to effect service within the six-month period provided by the Hague Convention or refuses to serve a complaint based on its own public policy or substantive law limitations." Id. at 313-14. Consequently, the better view is that Rule 4(f)(3) should be viewed as a "final effort to make service when other means have failed." *Marcantonio v. Primorsk Shipping Corp.***,** 206 F. Supp. 2d 54, 58 (D. Mass. 2002). Some cases

5

have authorized alternative service under Rule 4(f)(3) without first resorting to traditional means of service... but these cases seem to ignore the requirements of international comity and accord insufficient weight to the methods of service officially sanctioned by the governments of both the United States and its sister nation. Therefore, even if other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant.

The same holds true here. The Plaintiffs should not be permitted to blithely ignore international treaties, simply because they find it more expedient to do so. The Plaintiffs would surely demand due process before allowing themselves to be haled into a foreign court and the Defendants should be entitled to no less in the Courts of the United States.

### II.  The Court Cannot Authorize a Method of Alternative Service That Violates The Hague Convention.

Even if fairness and common sense did not dictate the denial of Plaintiffs' *Ex Parte* Motion, the confines of Rule Fed. R. Civ. P. 4(f)(3) would. Rule 4(f)(3) allows the Court to order service "by other means not prohibited by international agreement." And, although the Hague Convention does not prohibit all alternate methods of service of process, it does prohibit the use of methods to which a signatory country has objected. "To determine whether a destination country 'objects' to a particular form of service, the courts have looked to the service laws of that country to determine whether the method of service utilized would be valid in that country." *In re Hunt's Pier Associates v. Conklin* 27 Fed.R.Serv. 3d 165, 156 B.R. 464 (E.D. Pa. 1993) (citing *Gallagher v. Mazda Motor of American, Inc.*, 781 F. Supp. 1079 (E.D.Pa. 1992)). "[O]nly if service is valid under the service rules of the

6

destination country can it be found that the destination country does not "object" to the form of service utilized." *Id*.

Interestingly, in their *Ex Parte* Motion, Plaintiffs do not even attempt to argue that the method of service requested (i.e., service upon a party's attorney who has not been authorized to accept service of process) is permitted. There is a reason for that. Such service is not permitted *in any of the jurisdictions where the Defendants are located*.[7]

In Ontario, Canada, service of process of a complaint is governed by R.R.O. 1990, Reg. 194: RULES OF CIVIL PROCEDURE, Rule 16. Rule 16.01 provides that originating documents (i.e. a summons and complaint) may only be served pursuant to the rules of personal service in Rule 16.02 or alternative personal service of Rule 16.03.  (Ontario's Rules of Civil Procedure may be accessed at: https://www.ontario.ca/laws/regulation/900194, last accessed on November 16, 2016).

Rule 16.02 provides that service on an individual is effectuated only being handing a copy of the documents to the individual and service on a corporation may be effectuated by "leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business."

---

[7] It is hard not to suspect that the Plaintiffs filed the present motion on an *ex parte* basis in the hope that the Court would allow its motion without being appraised of the applicable law.

7

Rule 16.03, which specifically addresses alternative service by delivery to a party's attorney provides that such service is "effective only if the lawyer endorses on the document or a copy of it an acceptance of service and the date of the acceptance." Accordingly, service upon an attorney who has not been authorized to accept such service and who does not endorse the document as being accepted is ineffective.

The law of Barbados is similar, providing that service on an attorney is effective only where the attorney: "(a) is authorised to accept service of the claim form on behalf of the defendant; and (b) has notified the claimant in writing of that authorization." Supreme Court (Civil Procedure) Rules, 2008, Rule 5.6. (The Barbados Rules of Civil Procedure may be accessed at http://www.barbadoslawcourts.gov.bb/supreme-court-civil-procedure-rules/, last accessed on November 16, 2016.)

And, while slightly less specific, the Rules of Civil Procedure in the Seychelles also provide that service upon an agent is sufficient only if the defendant has appointed an agent "empowered to accept service on his behalf." LAWS OF SEYCHELLES, CHAPTER 213, SEYCHELLES CODE OF CIVIL PROCEDURE, Rule 35. (The Seychelles Code of Civil Procedure may be accessed at https://is.gd/ZomxCa, last accessed on November 16, 2016).

Nor are these rules particularly surprising. Courts in the United States routinely reject service of process on an attorney who has not been authorized to accept such service. *See, e.g., Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639

8

(S.D. Fla. 1982)("A person's attorney is not authorized to receive process simply because of his status as attorney. Service of process is not effectual on an attorney solely by reason of his capacity as an attorney. The party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney"); *Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 147 (N.D. Ind. 1985)("Courts have consistently held that for an attorney to be considered an agent for process, he must have been appointed for that precise task. ...Courts will not consider the fact that the attorney represented the defendant in an unrelated matter as evidence of an appointment for service of process")(numerous citations omitted); *Newton v. Brook Hansen, Inc.,* 1994 U.S. Dist. LEXIS 13512, 5-6 (E.D. La. 1994)("As stated previously by this Court, 'service cannot generally be made on an attorney retained by a corporate defendant, unless the attorney has been specifically authorized and designated by defendant to receive service of process'"); *Arthur v. Litton Loan Servicing, LP*, 249 F. Supp. 2d 924, 930 (E.D. Tenn. 2002)("However, the mere attorney-client relationship between a defendant and his attorney does not, in itself, convey the specific authority necessary for the attorney to receive service of process on the defendant's behalf.")

### III.     Plaintiffs' Argument Should Be Rejected On Public Policy Grounds.

Finally, it should be noted that – even if this Court *could* properly grant the relief requested by the Plaintiffs, it should not do so.  Plaintiffs argue that service on the Defendants' attorneys should be permitted because those attorneys entered into good faith settlement negotiations with the Plaintiffs.  If this argument is

9

accepted, the resulting outcome is all too predictable: parties will avoid all attempts to amicably resolve litigation lest such attempts be used (as the Plaintiffs attempt here) as a weapon against them.  It is unfortunate that the Plaintiffs have attempted such a maneuver here.  Certainly they should not be rewarded for doing so.

## Conclusion

For the reasons outlined hereinabove, the Defendants respectfully request that Plaintiff's Ex Parte Motion for Alternative Service be denied.

Respectfully submitted,

Sagan Limited, MXN LTD.,
Netmedia Services Inc., and
David Koonar,

By their attorneys,

/s/ Evan Fray-Witzer
Evan Fray-Witzer (#564349)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
evan@CFWlegal.com
*Pro Hac Vice Pending*

Valentin D. Gurvits (# 643572)
Boston Law Group, LLP
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
*Pro Hac Vice Forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2016, I electronically transmitted the attached document to the Clerk of the United States District Court, District of Arizona, using the online e-filing system.

By:   /s/ Evan Fray-Witzer