LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hydentra HLP INT. Limited, a foreign corporation, d/b/a METART d/b/a SEXART; Hydentra, L.P. HLP General Partner, Inc., a foreign corporation, d/b/a METART d/b/a SEXART, <br><br> Plaintiffs, <br> v. <br><br> Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; NetMedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; David Koonar, an individual, *et. al.*, <br><br> Defendants. | Case No. CV-16-1494-PHX-DGC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT SAGAN, LTD. AND MXN, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiffs, Hydentra HLP INT. and Hydentra, L.P. HLP (collectively "Hydentra"), hereby oppose Sagan, Ltd. and MXN Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction.

**I.      INTRODUCTION**

The web site www.Porn.com ("Porn.com") is clearly targeted and directed toward United States viewers such that the operators of the site have purposefully availed

themselves to the United States forum. The claims herein arise out of this contact with the United States, providing for jurisdiction here.

Defendants have created multiple "companies," each directly involved with the operation of Porn.com. Two of those companies are MXN, Ltd. (now known as Cyberweb Ltd.) and Sagan Ltd. Cyberweb is an admitted owner and operator of Porn.com. Sagan, Ltd., a Seychelles company, is admittedly a contracted operator of Porn.com. However, Sagan, Ltd. specifically represents to the United States government, via the U.S. Copyright Office, that Sagan **owns and operates** Porn.com. Sagan also represents to all viewers/users of Porn.com that Sagan **owns and operates** the site. United States Jurisdiction over Sagan and MXN/Cyberweb for the activities on Porn.com is appropriate.

Defendants' Motion is in bad faith, as this very Court already asserted personal jurisdiction over Porn.com owners/operators in *AMA MultiMedia, LLC v. Sagan Ltd., et al.,* United States District Court District of Arizona Cause No. CV-16-1269-PHX-DGC.[1]

## II. FACTUAL BACKGROUND

Porn.com is a video streaming site that generates revenue through advertising. *Declaration of Jason Tucker In Support of Opposition to Motion to Dismiss ("Tucker Decl."),* **Exhibit A** here, p. 2, ¶ 10. It is alleged in the Complaint that Sagan, Ltd. and MXN/Cyberweb are each one of several operators and/or owners of Porn.com. Complaint at ¶¶3-6, 38. Further, Hydentra alleges that the owners and operators of Porn.com purposefully, intentionally, and knowingly posted Hydentra's copyrighted

---

[1] To the extent that the arguments on personal jurisdiction over the Porn.com Defendants overlap between CV-16-1269-PHX-DGC and this case, Plaintiffs respectfully incorporate their previous arguments as if made again here. Plaintiffs also respectfully incorporates this Court's prior ruling that that "as an owner/operator of the [Porn.com] website," a defendant is subjected to personal jurisdiction in the United States. *Id*. at Doc. 69, p. 5.

videos on Porn.com, without authority or permission, for free display to the public.[2]  *Id.* at ¶¶ 57-73.

There are several owners and/or operators of Porn.com.  *See*, **Exhibit A** (*Tucker Decl.*) at ¶¶ 21-23.  Defendants concede that MXN/Cyberweb, Ltd. is an owner and operator of Porn.com.  Netmedia Services, Inc. has a technical services agreement for maintenance *and operation* of Porn.com, including programming, design, and uploading videos.  Sagan Ltd. represents to the United States Copyright Office that it is the owner and operator of Porn.com.  *Id.* at ¶¶ 21-23.  Sagan Ltd. also represents on the Porn.com Terms of Service that it is an owner and operator of Porn.com.  *Id.*

Defendants concede an owner/operator of Porn.com is MXN/Cyberweb Ltd., a company registered in Barbados.  The company's corporate filings in Barbados specifically state that the business of Cyberweb is "Internet Marketing" with the "company primarily in the *USA*."  *Id.* at ¶ 29.

U.S. viewers are the predominant viewers of Porn.com.  The site received 52.2 million visits between January and June 2016, and U.S. internet users were by far the largest source of viewers, comprising 23.26% of the 52.2 million viewers. (The second largest was Germany at 7.99%.)  *Id.* at ¶¶ 30-32.

At all times relevant to the infringement claims herein, Porn.com has been "hosted" through a U.S. company in Massachusetts called Reflected Networks and/or

---

[2] Defendants present declarations in support of their Motion to Dismiss for Lack of Personal Jurisdiction regarding their "version" of the manner in which Hydentra's videos were posted on Porn.com.  Hydentra has evidence that such "versions" are fabrications.  *See, Tucker Decl.* at ¶¶12-20.  However, the current stage of litigation is specific to personal jurisdiction, these facts are relevant to liability *and* the proper subject of discovery.  (In other words, the Court should not take the mere self serving declarations of Defendants before actual discovery can be done to challenge these words.)  As the factual issues pertain to liability rather then personal jurisdiction, Hydentra will not waste the Court's time with extensive response at this time.

- 3 -

1  Swiftwill, Inc.[3]  The HTML, or code, of Porn.com is hosted through servers in
2  Amsterdam. *Id.* at ¶34-44.  However, the actual videos displayed to U.S. viewers are,
3  even today, ***distributed from servers located in the U.S.*** Porn.com utilizes a Content
4  Delivery Network ("CDN"), Limelight, located in Arizona, to distribute the Porn.com
5  videos. *Id.* at ¶¶47-49.  Limelight's Arizona and U.S.-based servers actually distributed
6  Hydentra's infringed videos.

7  Further, Porn.com, through its Content Partnership Agreement ("CPA"), claims
8  significant ties to U.S. content producers.[4]  Porn.com displays advertisements from U.S.
9  companies that are geo-targeted to U.S. viewers. *Id.* at ¶¶ 36, 38.  Importantly, the U.S.
10 is one of the most profitable markets, if not the most profitable market for Porn.com, as
11 the U.S. has the highest amount of traffic coupled with some of the most expensive
12 advertising rates.  *Id.* at ¶37.  Porn.com utilizes a U.S.-based DMCA Agent, and
13 Porn.com's Terms of Service specifically references U.S. users. *Id.* at ¶ 41.

14 Porn.com also makes money directly from U.S. viewers.  To download a video or
15 watch in High Definition, the Porn.com member must pay for a premium membership,
16 which is processed through a U.S. company. *Id.* at ¶ 26.

17 Presented with these *exact same facts* regarding the *exact same defendants*, this
18 Court determined that personal jurisdiction is proper over the owners/operators of
19 Porn.com *AMA MultiMedia, LLC v. Sagan Ltd., et al.,* Cause No. CV-16-1269-PHX-DGC
20 at Doc. 69.  The distinction in this case, of course, is that Defendants cannot hide behind
21 a "Barbados is the proper forum" argument in this matter.  *See*, fn. 4.

---

[3] Swiftwill and Reflected.net are part of the same family of companies, with similar, if not identical ownership.

[4] Plaintiffs in this case do **not have** a CPA with the Defendants, and there is no forum selection argument here as there was in the related matter, CV-16-1269-PHX-DGC. Plaintiffs only refer to Porn.com's use of its CPA to demonstrate how it targets U.S.-based businesses and U.S.-based advertisers.

- 4 -

## III. LEGAL ARGUMENT

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). There is no statutory method for resolving this issue; thus, "the mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If a court decides to rule on personal jurisdiction without an evidentiary hearing, a plaintiff must make only a *prima facie* showing of jurisdictional facts to survive the motion. *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 919 (9th Cir. 2011).

The "uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor" to determine if Plaintiff has established a *prima facie* showing. *See*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Sagan and Cyberweb are subject to specific personal jurisdiction under FRCP 4(k)(2), often referred to as the federal long-arm statute. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006). Analysis of the federal long-arm statute is coextensive with Arizona's. *See*, Ariz.R.Civ.P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *Schwarzenegger*, 374 F.3d at 800.

FRCP 4(k)(2) provides for jurisdiction over a foreign defendant if the defendant is not subject to jurisdiction in any state's court and exercising jurisdiction is consistent with the U.S. Constitution and law. A court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal

jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Hydentra's claims here arise under federal law, and Sagan and Cyberweb are not subject to personal jurisdiction of any state court. The only dispute of jurisdiction over Sagan or Cybeweb is whether the exercise of personal jurisdiction comports with due process.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Data Disc*, 557 F.2d at 1287. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462.

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the forum court to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 30 1-02 (9th Cir. 1986). The Ninth Circuit Court of Appeals articulated the following three-prong test for finding personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger*, 374 F.3d at 802.

- 6 -

"The plaintiff bears the burden of satisfying the first two prongs of the test." If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.,* 374 F.3d at 802.

### A. Purposeful Direction

First, Hydentra must establish that Sagan and MXN/Cyberweb purposefully availed themselves of the privilege of conducting activities here *or* purposefully directed activities toward the forum. *Id.* These two inquires are often equated to "'purposeful availment,' . . . but availment and direction are, in fact, two distinct concepts." *Id.* (citations omitted). An analysis of purposeful availment of privileges of the forum state typically centers on the defendant's actions in the forum state and is usually analyzed in connection with contract disputes. *Id.* An analysis of purposeful direction, on the other hand, is typically used in tort suits and *normally centers on actions performed outside the forum that are directed toward the forum. Id.* at 802-03.

For intentional torts, the Ninth Circuit Court applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). Here, HYDENTRA's copyright infringement claims are properly analyzed under *Calder* test. *See, Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Rio*, 284 F.3d at 1019-20.

Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803. Purposeful availment found if "business activities reach out beyond one state and create continuing relationships and obligations." *Travelers Health Ass'n v. Cmnwlth of Va*, 339 U.S. 643, 647, 70 S. Ct. 927 (1950).

### 1. Intentional Act

Sagan and Cyberweb, as owners and/or operators of Porn.com, have acted intentionally by obtaining Hydentra videos without authority and displaying the videos on Porn.com under the guise of being posted by third parties. The Complaint alleges both Sagan and Cyberweb to be one of the owners and operators of Porn.com. Sagan is listed with the U.S. Copyright Office as an owner and operator of Porn.com. Porn.com represents to its users via Terms of service that Sagan is an owner and operator of Porn.com. *See, e.g.,* **Exhibit A**. Plainly, Sagan is an owner and operator of Porn.com. Cyberweb admits to ownership of Porn.com.

Intent under the *Calder* effects test is construed as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Operation of a website constitutes an intentional act. *Brayton, supra,* 606 F.3d at 1129 ("operating a passive website was an intentional act."); *see also*, *Datatech Ent. LLC v. FF Magn at Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, at *2 (N.D. Cal. Sept. 14, 2012) ("The intentional act element is broadly construed, and can be met by the mere operation of a website ....").

Here, Sagan and Cyberweb's intentional acts are even clearer. As alleged in the Complaint, they sought Hydentra's videos on other streaming sites across the Internet, captured these videos, and then posted them on Porn.com disguised as third-party uploads.

Defendants attempt to convince the Court to diverge from its ruling in *AMA v. Sagan, et al.,* wherein the Court specifically found intentional aiming in the U.S. by the Porn.com owners and operators, based upon two arguments. First, Sagan and Cyberweb argue that since three witnesses (one a defendant herein) have submitted sworn declarations stating that Hydentra's videos displayed on Porn.com were placed there by third-party users, there can be no intentional act by Defendants. Second, Defendants argue that as Hydentra is a company

- 8 -

organized under the laws of a foreign country, Defendants acts against Hydentra could not be aimed at the United States. Each of these arguments fails.

Sagan and Cyberweb's argument that their self-serving declarations that the Hydentra videos were uploaded by third parties does not eliminate their intentional act of displaying Hydentra's videos in the U.S. These videos were loaded on servers located in the U.S. for the exact purpose of displaying to U.S. viewers. This is clearly an intentional act. Further, the self-serving declarations are fabrications which are absolutely inconsistent with the unbiased evidence that these videos were, in fact, loaded by the owners and operators of Porn.com. This has been alleged in the Complaint and is supported by documentary evidence. *See*, **Exhibit A**. Finally, the issue of whether the Defendants themselves uploaded the videos, or caused them to be uploaded, is an issue of fact pertaining to **liability**, which will be explored during discovery and an issue at trial.

Next, Sagan and Cyberweb's argument that Hydentra's corporate formation in a foreign company is equally faulty. Hydentra operates in the U.S., employees people in the U.S., pays taxes in the U.S., files for copyright protection in the U.S. and, quite importantly, markets its paid membership websites in the U.S. *Declaration of Jon Krogman In Support of Opposition to Motion to Dismiss ("Krogman Decl."),* **Exhibit B** here, at ¶¶ 2, 6, 9-12. Hydentra certainly has an important U.S. presence. Moreover, where Hydentra is formed has nothing to do with the issue of whether Porn.com engaged in intentional act and if that act were expressly aimed at the U.S. Defendants mix "apples and oranges," trying to strip this Court of its ability to assert jurisdiction over the U.S. actions of Porn.com.

There is just no doubt that Porn.com *intentionally* displays its videos in the U.S. market, including Hydentra's videos. *See generally*, **Exhibits A** and **B**.

### 2. Express Aiming

Porn.com is expressly aimed at the U.S. First, Cyberweb (an owner of Porn.com) specifically stated in its corporate filings that the business is "primarily in the USA." *See*,

**Exhibit A** at ¶29.  Second, the primary visitors to Porn.com are U.S. residents, comprising 23.26% of Porn.com's viewers in the past 6 months.[5]  (The next closest country is 7.99%.) *Id*. at ¶32.  Third, Porn.com was hosted by Reflected or Swiftwill, a Massachusetts company, at all times relevant to the infringements alleged here, and it utilizes a CDN (for more effective and efficient delivery to U.S. viewers) which is comprised of Limelight servers throughout the U.S., from which the infringed videos were distributed.[6]  *Id*. at ¶46-53.

The primary purpose of the use of a U.S. CDN is significant.  The CDN provides faster delivery of web site content to viewers local to the CDN.  *Id*.  This is accomplished by locating servers with the content as geographically close to the end user as possible.  Limelight has more locations with servers in the U.S. than any other country in the world, by a significant margin.  *Id*.  The *primary* reason to utilize a U.S.-based CDN is to ensure faster delivery of videos to Porn.com's largest market, the United States.  Fourth, Porn.com claims relationships with U.S. content producers through its Content Partnership Program, and with U.S. advertisers who direct advertisements to U.S. viewers.  Fifth, Porn.com geo-targets its advertising to U.S.-based users.  Sixth, Porn.com has a U.S.-based DMCA agent, showing it seeks protection under U.S. laws.  *See generally*, **Exhibit A**; *see also*, fn. 1, *supra*.

In the past, courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *See Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F. 3d 1218, 1229 (9th Cir. 2011). The Ninth Circuit Court of Appeals has held that while "maintenance of a

---

[5] Defendants assert that 2/3 of viewers of Porn.com come from outside the United States.  This is misleading.  Not only is the next largest market 7.99%, the 2/3 referenced by Defendants is compromised up of 195 other countries.  That the United States is nearly 24% of Porn.com viewers is significant.

[6] Defendants do not deny the use of Arizona-based Limelight Networks, nor the use of Arizona-based servers in the delivery of the infringed material.  Instead, they simply state they are not involved in a *direct* contractual relationship with Limelight.

passive website alone cannot satisfy the express aiming prong ... operating even a passive website in conjunction with 'something more'— *conduct directly targeting* the forum—is sufficient." *Id.* (Emphasis added.)  To determine that "something more," the Ninth Circuit considers "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.*

The Ninth Circuit has found that the number of visitors to a site from a particular forum is relevant to the express aiming inquiry. *Mavrix* at 1230 (concluding that there was express aiming at California, where, "[a] substantial number of hits to [defendant's] website came from California residents.")  That Court has also found it "most salient the fact that [a defendant] use[s] [a plaintiff's] copyrighted photos as part of its exploitation of the [forum] market for its own commercial gain." *Mavrix*, at 1229. The relevant inquiry is whether the third-party advertisements demonstrate that Defendant exploited the U.S. market for commercial gain. *Id.*

In *Mavrix*, the court considered specific personal jurisdiction where the plaintiff alleged infringement by the defendant for "posting its copyrighted photos on its website." *Id.* at 1221. The defendant operated an interactive website on which visitors could post comments, vote in polls, join a membership club, and "submit news tips and photos of celebrities." *Id.* at 1222. The court noted that an Internet tracking service ranked the website "as number 3,622 out of approximately 180 million websites worldwide based on traffic." *Id.* Here, Porn.com is ranked 536 globally, 328 in the U.S., and 23.26% of its visitors are from the U.S.

The *Mavrix* Court pointed out that while defendant's website courted a national audience, the defendant made "money from third-party advertisements" for California activities and had "agreements with several California businesses," including

- 11 -

an Internet advertising agency and a wireless provider to host a version of the site. *Id.*[7]

In *Datatech,* 12% of the subject web site's traffic came from the United States, the defendant registered with the U.S. Copyright Office, the web site Terms of Service referred to U.S. Law, the web site utilized U.S. company vendors. The Court found that the substantial number of hits from the U.S., and profit from those hits, in combination with features of the web site operations and Terms of Service demonstrated that the web site exploited U.S. copyright interests and the suit arose from the U.S. web traffic. *Id.*

In *Cybernet Entertainment, LLC v. IG Media, Inc., et al.,* United States District Court District of Arizona Cause No. CV 12-01101-PHX-SRB, this District reviewed facts substantively the same as the instant case. There, defendants' web sites' traffic was comprised of between 25.8% and 31.4% from the U.S., contained advertising targeting U.S. viewers, made money from advertisers from users in the U.S., and defendants had

---

[7] The *Mavrix* court specifically stated:

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain ….

*See Mavrix*, 647 F.3d at 1230. *See also, IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 992-93, 995, 997 (N.D. Cal. 2010) (express aiming and personal jurisdiction in copyright action where defendant owned/operated a website where users could view, copy, upload, and download photographs and moving pictures, stating that "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as [d]efendant earned revenue from advertisements that appeared on the site"). The same legal analysis applies here.

contracts and agreements with U.S. entities (including a DMCA Agent). The Court concluded that Defendants were aware of "cultivating a United States market and desired to do so." The same is true here.

Here, Porn.com utilizes a DMCA agent in Michigan, claims Partnership Agreements with U.S. content producers, and has advertising relationships with U.S.-based advertisers directing ads at U.S. viewers, which account for the user's location. Porn.com is also registered with the U.S. Copyright Office, hosted by a U.S. company at the time of the infringements, and distributed infringed videos to U.S. viewers through Limelight's U.S.-based servers.[8] Moreover, one of the owners of Porn.com has specifically stated that its business is primarily in the U.S. **Exhibit A** at ¶29. And, we know that Porn.com individually targets U.S. content producers for contractual agreement. Fn. 1, *supra*.

Both Sagan and Cyberweb are owners and operators of Porn.com. *Id.* Based on Porn.com's subject matter, size and commercial value of the U.S. market, its direct relationship with U.S. content-producers, and its utilization of U.S. hosting companies and CDNs, both Sagan and Cyberweb have anticipated, desired, and <u>achieved</u> a substantial U.S. viewer base. That videos on Porn.com are delivered through U.S.-based CDN servers cannot be overlooked. The delivery of such videos through these servers permits faster and more efficient delivery to viewers local to the CDN servers. The faster and more efficient delivery to U.S. viewers strongly signifies the intent to market Porn.com to the U.S. Defendants knew they were cultivating a U.S. market and expressly desired to do so. *See Mavrix*, 647 F.3d at 1230.

---

[8] Defendants argue that Porn.com's registration with the U.S. Copyright Office cannot be used as the basis of jurisdiction. Defendants misunderstand the importance of both the U.S. Copyright registration and the appointment of a U.S.-based DMCA Agent. These <u>undisputed facts</u> are evidence that Porn.com **intends to aim at the U.S. market.** They are not facts that, alone, establish jurisdiction. The facts simply support where Porn.com is targeting its business (and seeking protection) – the United States.

- 13 -

That Porn.com has a DMCA agent (and that the site advises procedures to make complaints of U.S. copyright infringement) suggests that it was aware that its websites "exploited (and threatened) U.S. copyright interests." *See Cybernet, citing Datatech Enters. LLC v. FF Magnat Ltd., No. C 12-04500 CRB,* 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sep. 14, 2012) (granting an injunction, concluding a reasonable probability that plaintiff (an adult-oriented content producer) could establish personal jurisdiction under FRCP 4(k)(2) where defendant's file-sharing website received "a 'substantial number of hits' from the United States and directly profited from those hits" and where "several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) U.S. copyright interests").

Defendants' Motion completely disregards this Court's clear and concise analysis in *AMA v. Sagan*, wherein the Court specifically found that Porn.com was and is expressly aimed at the U.S. *Id.* at Doc. 69. Rather, Defendants merely present a litany of trial court decisions *outside the Ninth Circuit* which looked only at the number of U.S. visitors to web sites. Defendants also allege that any relationships with advertisers are "indirect" relationships, linked only through brokers. This argument is intended to mislead the Court. Whether through ad brokers or directly, the reality is that Porn.com sells advertising space to U.S. vendors – which is the most valuable ad space to sell. To argue that Porn.com owners are simply benefiting bystanders to such relationships is without any sense of credibility. When an Internet web site makes most of its revenue through the sale of ad space, the owners and operators are keenly aware of the value of the ad spaces and where they are being sold.[9]

Defendants further argue that their current hosting company is Viking Host B.V., located

---

[9] Defendants present a litany of cases supporting the argument that Internet advertising is not alone enough to establish jurisdiction. However, these cases were analyzing jurisdiction over the advertisers. In the case at hand, the relationship with U.S. advertisers is evidence of intent to aim at the U.S. market.

in the Netherlands. Importantly, at the time the infringements were discovered, Porn.com was hosted by Reflected Networks, a U.S. company. Further, Viking Host B.V. is an alter ego or reseller of Reflected Networks, and being used here to try to distance Porn.com from the U.S. Finally, whether through a direct relationship or indirect relationship, Porn.com is displayed to U.S. viewers by and through a U.S. CDN – ensuring faster and more efficient delivery to the viewer. There is no credibility to Porn.com Defendants' argument that they are unaware of their purposeful aiming when they earn revenue directly related to the number of U.S. viewers on the website (and have purposefully used servers that cater to U.S. viewers).

Based on Porn.com's numerous and various contacts with the U.S., the substantial amount of traffic from U.S., and the fact that Porn.com profits – whether directly or indirectly – from U.S.-targeted advertising, Hydentra has sufficiently established a *prima facie* case of express aiming at the U.S. *See Mavrix*, 647 F.3d at 1231.

### 3. Harm in the Forum

While Hydentra is formed as a company in Cyprus, it operates from the U.S., employs U.S. citizens located in the U.S., pays U.S. taxes, and has registered its works with the U.S. Copyright Officer. *See*, **Exhibit B** at ¶¶9-13. Hydentra specifically and intentionally markets its paid membership web sites to U.S. viewers. *Id*. In fact, a majority of Hydentra's revenue is generated through U.S. members. *Id*. Hydentra's videos infringed on Porn.com were displayed in the U.S. for free – which obviously deters viewers from paying Hydentra's membership fees. *Id*. Hydentra has adequately alleged that it has suffered harm in the U.S. as a result of Defendant's actions, meeting the *Calder* test.

### B. Arises Out of Defendant's Forum-Related Activities

Hydentra must also show that its claims arise out of or relate to Defendants' forum-related activities. *Schwarzenegger*, 374 F.3d at 802. A claim arises from forum-related activities if plaintiff "would not have been injured 'but for'" defendant's conduct directed

- 15 -

toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The "'arising out of' requirement" should not be read restrictively; rather, the "but for" test merely "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum" and "preserves the essential distinction between general and specific jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by* 499 U.S. 585.

Hydentra operates in the U.S., with U.S. servers to broadcast its U.S. copyrighted videos to its U.S. based paying members. Defendants are each one of the owners and operators of Porn.com, hosted by a U.S.-based webhosting provider and distributed the infringed videos to U.S. viewers through Limelight's U.S. and Arizona-based servers.

Hydentra has been harmed in the U.S. because Defendants targeted the U.S. and caused Hydentra's copyrighted works to be displayed and viewed on its sites in the U.S. *See*, **Exhibits A** and **B**. Hydentra's injury in the U.S. stems from the substantial amount of U.S. traffic to Defendant's websites. Thus, Hydentra's claims arise out of Defendant's U.S.-related activities through Porn.com. *See Mavrix*, 647 F.3d at 1228; *Rio*, 284 F.3d at 1021.

### C. Reasonableness

Where the first two requirements of specific personal jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable"; that is, "it must comport with 'fair play and substantial justice.'" *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at 476). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Schwarzenegger*, 374 F.3d at 802. In determining reasonableness, courts consider seven factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021.

Here, all seven factors support exercising jurisdiction over Sagan and Cyberweb, and these Defendants fail to present a compelling case that jurisdiction is unreasonable.

<u>First</u>, as an owner and operator of Porn.com, Defendants have extensively interjected in the forum. As this Court already found in CV-16-01269-PHX-DGC, "Porn.com has made substantial interjections into the United States," and "…as an owner/operator of Porn.com, Sagan has interjected itself by engaging in relationships with United States companies and advertisers to directly target the United States for commercial gain." *Id.* at Doc. 69, p. 11. That analysis equally applies in this instance.

<u>Second</u>, it is disingenuous for Defendants to argue a substantial burden to litigate this matter in the U.S. when: a) they filed a similar lawsuit in Barbados (an equally "burdensome" location); b) their business is all over the United States; and c) most, if not all, discovery these days can be achieved by electronic means (meaning that there is no weight to be given to the fact that "records are maintained" outside of this jurisdiction). We know from the related case before this Court (fn. 1, *supra*) that these Defendants routinely travel to the U.S. for tradeshows, advertising meetings, and related activities. Where employees can easily travel to the U.S. to acquire *business*, it is hardly reasonable to assert that traveling here for a lawsuit is a "great burden." Perhaps most importantly, the Defendants do not suggest **any** other forum or jurisdiction that would be less burdensome.

<u>Third</u>, Defendant Sagan fails to explain why Barbados or Seychelles has more compelling interest in governing actions in the U.S. which violate U.S. copyright laws. The alleged infringement is protected under U.S. law, and the Defendants' acts arise from

their substantial contacts directed at the U.S. for their own commercial gain. Therefore, neither Barbados nor the Seychelles has a more "compelling" interest in resolving the infringement of U.S.-copyrighted works.

Fourth, Defendants fail to explain why this forum does not have a particular interest in adjudicating this dispute. They blanketly argue that "the Republic of Cyprus" is the only country with an interest in protecting Hydentra, ignoring that Hydentra runs a location in the U.S., employs U.S. citizens (including accountants, assistants, and programmers), *pays taxes in the U.S.* (including business taxes and employment taxes), caters to a U.S. customer base, and seeks U.S. copyright protections to protect its U.S. market-share. *See*, **Exhibit B** at ¶¶9-13.

U.S. District Courts certainly have significant interests in resolving disputes of U.S. copyright infringements by foreign defendants. By Defendants operating Porn.com in the U.S., this District Court can surely demonstrate a particular interest in this case. Notably, Defendants have not suggested any other U.S. forum to adjudicate this matter.

Fifth, Defendants argue that "most everyone required for trial will come from outside the U.S.," excepting only experts and lawyers. That is not true, as Hydentra witnesses and employees very well reside in the U.S. The videos displayed in this case were served from Content Delivery Network Limelight, located here in the U.S., and several key pieces of evidence will be derived from the U.S. Moreover, Defendants fail to offer a more efficient forum to decide infringement of U.S. copyrights.

Sixth, Defendants argue a mere "inconvenience" of litigation here, yet Hydentra demonstrated that Arizona is the location of the CDN servers. These servers can be more easily accessed in discovery, which would be governed by this Court. Similarly, Hydentra is predominantly operated from Santa Monica, California and has U.S.-based activities that require U.S. copyright protections. The **U.S.** is the proper forum here, and the U.S. surely has an interest in conveniently and effectively resolving its copyright law disputes.

Seventh, Defendants argue that their "home countries" each "respect copyrights" and therefore are adequate alternative forums for this suit. However, these infringements occurred **in the United States** through acts of Defendants **aimed at the United States**. No other forum should be deemed "adequate" to deal with matters that clearly involve United States copyrighted works that are governed by U.S. **law**. No other forum could reasonably decide the extent of protections or liabilities like this U.S. Court can.

### III. CONCLUSION[10]

For the reasons stated herein, Hydentra respectfully requests that the Court deny Sagan, Ltd. and Cyberweb, Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction consistent with the Court's ruling in *AMA v. Sagan, et. al.*

**DATED** this 10th day of April, 2017.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

---

[10] Hydentra acknowledges that this Response is 19 pages, in excess of the normal page limit but reminds this Court that there is an Order allowing the parties to exceed the page limit (Doc. 34) because certain Defendants filed a Joint Motion to Dismiss.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2017, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing. Copies will be transmitted via CM/ECF to the following recipients:

Evan Fray-Witzer
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA  02116
Evan@CFWlegal.com
*Attorneys for Defendants*

Valentin D. Gurtvis
Boston Law Group, LLP
825 Beacon Street, Suite 20
Newton Centre, MA  02459
vgurvits@bostonlawgroup.com
*Attorneys for Defendants*

Matthew Shayefar
Boston Law Group, LLP
825 Beacon Street, Suite 20
Newton Centre, MA  02459
matt@bostonlawgroup.com
*Attorneys for Defendants*

Courtesy Copy sent by electronic mail this same date to:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants*


By: ___/s/ Gina Murphy_____