EXHIBIT A

1 | LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
2 | 8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
3 | (480) 222-9100
vmanolio@mf-firm.com
4 | Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*
5 |

6 | **IN THE UNITED STATES DISTRICT COURT**

7 | **IN AND FOR THE DISTRICT OF ARIZONA**

8 | Hydentra HLP INT. Limited, a foreign | Case No. CV-16-1494-PHX-DGC
9 | corporation, d/b/a METART d/b/a SEXART;
Hydentra, L.P. HLP General Partner, Inc., a
10 | foreign corporation, d/b/a METART d/b/a | **DECLARATION OF**
11 | SEXART, | **SPENCER FREEMAN
IN SUPPORT OF PLAINTIFFS'**
12 | Plaintiffs, | **OPPOSITION TO DEFENDANT
NETMEDIA SERVICES, INC.'S**
13 | v. | **MOTION TO DISMISS FOR
(1) LACK OF PERSONAL**
14 | Sagan, Ltd., a Republic of Seychelles | **JURISDICTION AND**
15 | company, individually and d/b/a Porn.com; | **(2) FAILURE TO STATE A**
MXN, Ltd., a Barbados Company, | **CLAIM UPON WHICH RELIEF**
16 | individually and d/b/a Porn.com; NetMedia | **CAN BE GRANTED**
Services, Inc., a Canadian Company,
17 | individually and d/b/a Porn.com;
David Koonar, an individual, *et. al.,*
18 |
19 | Defendants.

20 |

21 | I, Spencer Freeman, declare:

22 |     1.    I am an attorney at law licensed to practice in the State of Washington (and

23 | have appeared *pro hac vice* in the District Court of Arizona many times).  I am the

24 | owner/principal of Freeman Law Firm, Inc. in Tacoma, Washington, and our firm acts as

25 | General Counsel to the Plaintiffs in this matter (while Manolio & Firestone, PLC and/or

26 | Ms. Manolio are local litigation counsel).

2.      I have personal knowledge of the facts stated in this Declaration.

3.      I was an attorney of record for the Plaintiff in the matter of *AMA MultiMedia, LLC v. Sagan Limited, et al.*, United States District Court District of Arizona Cause No. CV-16-1269-PHX-DGC ("*AMA v. Sagan, Ltd., et al.*"), wherein the Defendants were the exact same Defendants as in this case. Attached here as **Exhibit A** is this Court's Order in that case finding jurisdiction over Porn.com in the United States.

4.      In my role as an attorney in *AMA v. Sagan, Ltd., et al.*, I was provided a copy of a Statement of Claim filed in Barbados by the Defendants against my client, AMA MultiMedia, LLC. Attached hereto as **Exhibit B** is a true and correct copy of the Statement of Claim.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 10th day of April, 2017 at Tacoma, Washington.

/s/ Spencer D. Freeman
Spencer Freeman

- 2 -

# EXHIBIT A

## Court Order Re Jurisdiction, Dkt. No. 69, Dkt. No. 72-1, AMA MultiMedia LLC v. Sagan, Ltd., et al., Cause No. CV 16-1269 PHX DGC

1  WO
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                        FOR THE DISTRICT OF ARIZONA
8
9  AMA Multimedia LLC,                    No. CV-16-01269-PHX-DGC
10                Plaintiff,               **ORDER**
11 v.
12 Sagan Limited, et al.,
13                Defendants.
14
15
16        Plaintiff AMA Multimedia, LLC, a producer of pornographic material, asserts
17 copyright infringement claims against several entities and one individual associated with
18 the website Porn.com: Sagan, Limited; Cyberweb, LTD; Netmedia Services, Inc.; GLP 5,
19 Inc.; and David Koonar.  Defendant Sagan, a Seychelles corporation, moves to dismiss
20 for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or,
21 in the alternative, to stay these proceedings pending resolution of an action currently
22 before the Supreme Court of Barbados.  Doc. 42.  The parties' request for oral argument
23 is denied because the issues have been fully briefed and oral argument will not aid in the
24 Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th
25 Cir. 1998).  The Court will deny both the stay request and the motion to dismiss.
26 **I.    Background.**
27        Porn.com is a video streaming website that generates revenue through its Content
28 Partnership Program and advertising banners.   Doc. 16, ¶¶ 56-57.   AMA asserts

Defendants Sagan, Cyberweb, Netmedia, and David Koonar are each owners and/or operators of Porn.com and GLP. Doc. 16, ¶¶ 2-3, 46-47. Defendants have claimed that Cyberweb is the owner/operator of Porn.com (Doc. 27-3 at 3, ¶ 15), but Sagan is listed as an owner/operator by both Porn.com's terms of service and a designation form filed with the U.S. Copyright Office (Doc. 51-1 at 6-9). Sagan does not contest the validity of these documents, and states only that "Sagan does not own any domain names or websites or contact with any entity located in Arizona to provide services, including hosting and the like." Doc. 42-1 at 12; Doc. 60 at 8.

In September 2012, AMA joined Porn.com's Content Partnership Program by entering into a content partner revenue sharing agreement ("CPRA") with GIM Corp. ("GIM"). Doc. 33 at 6; *see also* Doc. 52 at 2 (incorporating Doc. 33 by reference). AMA agreed to the CPRA by completing an automated process at Paidperview.com. *Id.* There was no direct contact between AMA and any of the Defendants. *Id.* The CPRA granted GIM a license to use content provided by AMA on websites whose advertisements are controlled by Traffic Force. *Id.* The CPRA dictated the manner and form in which AMA would provide content, and AMA granted GIM a license only for content provided under the CPRA. *Id.*

In November 2015, AMA became aware that Porn.com had displayed 64 of AMA's copyright registered works over 110 separate Porn.com affiliated URLs. Doc. 16 at ¶ 78. In December 2015, AMA provided Defendants' counsel with a draft complaint and settlement offer regarding the alleged infringement. Doc. 33 at 2. According to AMA, over the next four months "Defendants provided a string of delays and misrepresentations about the matters and settlement negotiations." *Id.* In April 2016, AMA presented Defendants with an amended complaint and a "deadline to choose between accepting a settlement offer or hav[ing] the case filed in U.S. District Court, for the District of Arizona." *Id.* at 3. Defendants requested an extension until April 28, 2016 to consider the settlement offer, and AMA agreed. *Id.*

On April 27, 2016, Cyberweb, Netmedia, Sagan, GLP, GIM, and David Koonar

- 2 -

1   (collectively, "Porn.com Entities") filed a complaint against AMA and Adam Silverman

2   in the Supreme Court of Barbados. Doc. 27-3 at 17-23. The Porn.com Entities sought

3   (1) injunctive relief to restrain anticipatory breach of the CPRA, (2) a declaration that any

4   disputes related to the CPRA are governed by Barbados law and must be adjudicated in

5   Barbados, (3) a declaration that the Porn.com Entities are entitled to rely on their rights

6   under the CPRA, (4) a declaration that the Porn.com Entities are entitled to publicize and

7   distribute materials provided to them by AMA and Silverman, and (5) relief for prior

8   breaches of the CPRA, including damages. *Id.* at 17-18.

9        AMA filed this action the next day, April 28, 2016. Defendant Sagan now moves

10  to dismiss the claims against it for lack of personal jurisdiction, or, in the alternative, to

11  stay these proceedings pending completion of the Barbados action. Docs. 42, 61, 62.

12  **II.   Personal Jurisdiction.**

13       **A.   Legal Standard.**

14       "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

15  bears the burden of demonstrating that the court has jurisdiction over the defendant."

16  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the

17  defendant's motion is based on written materials rather than an evidentiary hearing, the

18  plaintiff need only make a prima facie showing of jurisdictional facts to withstand the

19  motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th

20  Cir. 2011). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,'

21  but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting

22  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The

23  Court may not assume the truth of allegations in a pleading that are contradicted by an

24  affidavit, but factual disputes are resolved in Plaintiff's favor. *Id.*

25       **B.   Personal Jurisdiction over Sagan.**

26       AMA argues that Sagan is subject to personal jurisdiction under Federal Rule of

27  Civil Procedure 4(k)(2). Doc. 51 at 4-5. Rule 4(k)(2) provides that serving a summons

28  or filing a waiver of service establishes personal jurisdiction over a defendant if (1) the

- 3 -

1  claim arises under federal law, (2) "the defendant is not subject to jurisdiction in any

2  state's courts of general jurisdiction," and (3) exercising jurisdiction is consistent with the

3  United States Constitution. Fed. R. Civ. P. 4(k)(2).

4       The first factor is satisfied in this case because AMA asserts claims of copyright

5  infringement under federal law.  The second factor is satisfied if the defendant "does not

6  concede to jurisdiction in another state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,

7  485 F.3d 450, 461 (9th Cir. 2007) (citation omitted).  Sagan does not make this

8  concession.

9       Analysis under the third factor – the due process analysis – "is nearly identical to

10  traditional personal jurisdiction analysis with one significant difference: rather than

11  considering contacts between the [defendant] and the forum state, we consider contacts

12  with the nation as a whole."  *Id.* at 462.  The question, then, is whether Sagan has

13  sufficient minimum contacts with the United States so that maintenance of the suit here

14  does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v.*

15  *Wash.*, 326 U.S. 310, 316 (1945).  A court must consider whether (1) the defendant

16  purposely directed conduct at the forum, (2) the claim arises out of the defendant's

17  forum-related activities, and (3) the exercise of jurisdiction comports with fair play and

18  substantial justice. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th

19  Cir. 2011).[1]

20       Sagan asserts that it has no contacts of any kind with either the United States or

21  Arizona.  Doc. 42-1 at 5.  AMA alleges in its complaint, however, that Sagan is an

22  owner/operator of Porn.com, and AMA provides documentation in support of its claim.

23  Doc. 16, ¶¶ 2-3; Doc. 51-1 at 6-9 (U.S. Copyright Office Designation form and Porn.com

24  terms of service showing Sagan as the owner/operator of Porn.com).  In its reply, Sagan

25

26       [1] Personal jurisdiction can be established by showing that a forum has either
27  general or specific jurisdiction over a defendant. *Goodyear Dunlap Tires Operations,*
    *S.A. v. Brown*, 564 U.S. 915, 924-25 (2011).  It seems that general jurisdiction would
28  never apply in the context of Rule 4(k)(2), because if a defendant had the continuous and
    systematic presence required for general jurisdiction, it would be subject to suit in the
    state where it has such presence and Rule 4(k)(2) would therefore not apply.

1    does not address, much less contest, AMA's allegation or supporting documentation. *See*
2    Doc. 60. Accordingly, the Court will accept as true that Sagan is an owner/operator of
3    Porn.com. *Mavrix*, 647 F.3d at 1223 ("[U]ncontroverted allegations in the complaint
4    must be taken as true . . . [and] we resolve factual disputes in the plaintiff's favor.").

5        Sagan and the other Defendants do not claim that Porn.com is a separate corporate
6    entity. It appears to be a website. Thus, Sagan is not protected from the jurisdiction-
7    establishing actions of Porn.com by a corporate shield, and the Court need not consider,
8    as it has in other orders in this case, whether Sagan is an alter ego of Porn.com. As an
9    owner/operator of the website, Sagan is responsible for its activities.

10                    **1.    Purposeful Direction.**

11       The first required element of specific jurisdiction, "purposeful direction," is
12   satisfied when a defendant (1) commits an intentional act, (2) expressly aimed at the
13   forum, (3) which causes foreseeable harm in the forum. *Id.* This test is sometimes
14   referred to as the "effects test." *Id.* The effects test does not "stand for the broad
15   proposition that a foreign act with foreseeable effects in the forum state always gives rise
16   to specific jurisdiction." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675
17   (9th Cir. 2012) (citation and quotation marks omitted). Nor does the effects test mean
18   that specific jurisdiction may be based solely on a defendant's knowledge that the subject
19   of his tortious activity resides in a particular state. *See Walden*, 134 S.Ct. at 1125. The
20   Court must always focus on the "'relationship among the defendant, the forum, and the
21   litigation' [which] is the essential foundation of in personam jurisdiction." *Helicopteros*
22   *Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v.*
23   *Heitner*, 433 U.S. 186, 204 (1977)). "The proper question is not where the plaintiff
24   experienced a particular injury or effect but whether the defendant's conduct connects
25   him to the forum in a meaningful way." *Walden*, 134 S.Ct. at 1125.

26                    **a.    Intentional Act.**

27       AMA must show that Sagan committed an "intentional act." Under the effects
28   test, this means "an intent to perform an actual, physical act in the real world, rather than

                              - 5 -

1  an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d
2  at 806.  AMA alleges that the operator of Porn.com engaged in the "improper collection
3  and distribution of [AMA's] copyrighted works" and "actively uploaded and/or
4  distributed pirated copyrighted files and/or embedded code, enabling users of Porn.com
5  to view copyrighted videos and images for free." Doc. 16, ¶¶ 114, 116. Sagan does not
6  deny these allegations in either its motion or its reply. *See* Docs. 42, 60.  Instead, Sagan
7  states that "none of the above mentioned allegations specifically address Sagan, nor are
8  they applicable to the business activities of Sagan." Doc. 42-1 at 10.  But AMA's
9  allegations specifically address the conduct of Porn.com's operator, and Sagan, as
10 mentioned above, is an owner/operator of Porn.com. Accordingly, the Court finds that
11 Sagan engaged in an intentional act.

12                          **b.    Expressly Aimed at the Forum.**

13         AMA must make a prima facie showing that the conduct of Sagan, as an operator
14 of Porn.com, is expressly aimed at the forum. In this instance, under a Rule 4(k)(2)
15 analysis, the forum in question is the United States as a whole. *See Holland*, 485 F.3d
16 at 461.

17         Courts "have struggled with the question whether tortious conduct on a nationally
18 accessible website is expressly aimed at any, or all, of the forums in which the website
19 can be viewed." *Mavrix*, 647 F.3d at 1229. "[M]aintenance of a passive website alone
20 cannot satisfy the express aiming prong." *Id.* However, "operating a passive website in
21 conjunction with 'something more' – conduct directly targeting the forum – is sufficient."
22 *Id.* In determining whether 'something more' exists, the Ninth Circuit considers a
23 number of factors, including the "interactivity of the defendant's website," "the
24 geographic scope of the defendant's commercial ambitions," and "whether the defendant
25 'individually targeted' a plaintiff known to be a forum resident." *Id.*

26         A defendant expressly aims at a forum when he engages in conduct to exploit the
27 forum market for commercial gain. *See Mavrix*, 647 F.3d at 1229. In *Mavrix*, the Ninth
28 Circuit conducted a purposeful direction analysis to evaluate whether the owner/operator

of a celebrity website established sufficient contacts with the state of California when it published copyrighted celebrity photos online. *Id.* at 1228-1232. The court found that the websites owner/operator had engaged in express aiming at California. *Id.* The court considered several facts, including that the website sold advertising space to third-party advertisers who targeted California and that a substantial number of hits to the website came from California. *Id.* The "most salient" fact in favor of express aiming was "that [the website] featured [the plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1230.

Like the website operator in *Mavrix*, whose expressly-aimed conduct included making money based on advertising and website traffic from users in California, Sagan earns revenue based on advertising and website traffic in the United States. In fact, AMA alleges that in the past 6 months, United States residents were the largest source of Porn.com users, comprising 23.26% of Porn.com's 52.2 million viewers. Doc. 51 at 8. German residents made up the second largest source at 7.99% of users. *Id.* Additionally, Porn.com is hosted by a Massachusetts company, Reflected Networks, and utilizes a Content Delivery Network ("CDN") comprised of severs located in Arizona and throughout the United States. *Id.* ("The primary purpose of a U.S. CDN is significant" because "the CDN provides faster delivery of web site content to viewers local to the CDN" by "locating the servers with the content as geographically close to the end user as possible."). Porn.com also claims relationships with at least eleven United States content producers through its Content Partnership Program, including three Arizona-based companies – Oppenheit, LLC, XFC, Inc., and Nomad Media, Inc. *Id.*; Doc. 32-5 at 6, ¶ 28 (declaration of Jason Tucker). Furthermore, Porn.com contracts with United States advertisers to reach United States users with geo-targeted advertisements. *Id.* Lastly, Porn.com has a Digital Millennium Copyright Act ("DMCA") agent based in the United States, seeking protection under United States Laws. *Id.*; Doc. 32-5 at 6, ¶ 29.

Sagan tries to distinguish this case from *Mavrix*, noting that in *Mavrix* (1) "the website's server was located in California, (2) a California company maintained the

1   website, and (3) the allegedly infringing material specifically attracted a significant

2   number of California residents to the website." Doc. 60 at 9. The Court is not persuaded.

3   AMA has alleged that Porn.com's servers are hosted in the United States (Doc. 51 at 8),

4   that Porn.com contracts directly and through brokers with United States advertisers who

5   tailor their ads to the end user's geographic location in the United States (Doc. 16, ¶ 15),

6   and that the United States market makes up a substantial portion of Porn.com's traffic

7   (Doc. 51 at 8; Doc. 32-5 at 6, ¶ 28). These contacts are sufficient to establish express

8   aiming at the United States.

9        Sagan further argues that the recent Supreme Court decision in *Walden v. Fiore*

10   precludes the Court's consideration of Porn.com's contacts with the United States created

11   through third parties, such as advertisers or corporate partners. Doc. 60 at 5-6. As an

12   initial matter, it is important to note that *Walden* did not deal with the question of how

13   contacts through the internet affect minimum contacts analysis. *Walden*, 134 S. Ct. at

14   1125 n.9. Even still, *Walden* is not helpful to Sagan.

15        In *Walden*, two airline passengers brought suit against a Georgia police officer,

16   alleging that the officer violated their Fourth Amendment rights by seizing cash they

17   were carrying while traveling through Georgia on their way home to Nevada. *Id.* at

18   1119-20. After seizing the cash, the officer forwarded it to the United States Attorney's

19   Office in Georgia, and completed an affidavit to show why he had probable cause for the

20   seizure. *Id.* The money was eventually returned to the plaintiffs, and they sued the

21   officer in Nevada, seeking damages for his allegedly wrongful conduct in Georgia. *Id.* at

22   1120. The Supreme Court held that Nevada lacked personal jurisdiction because the

23   officer did not have sufficient minimum contacts with the forum. *Id.* at 1124. The

24   plaintiffs argued that sufficient contacts could be established by the fact that plaintiffs'

25   Nevada attorney had contacted the officer in Georgia. *Id.* at 1125. The Court rejected

26   this assertion, stating that the "unilateral activity" of a third party "cannot satisfy the

27   requirement of contact with the forum state," and "it is the defendant, not the plaintiff or

28   third parties, who must create contacts with the forum State." *Id.*

1    AMA does not establish Porn.com's contacts with the United States through
2  unilateral actions of third parties.  AMA instead relies, in part, on contracts made by
3  Porn.com with third parties, such as advertisers and content providers, to directly target
4  United States users.  These contacts are rightly viewed as actions by Porn.com, not
5  unilateral actions of the advertisers and content providers.

6    Unlike the officer in *Walden*, whose only conduct was his interaction with the
7  plaintiffs in Georgia, Porn.com's conduct expressly aims at the United States.  Taking
8  AMA's allegations as true, Porn.com has contracted with at least eleven United States
9  partners through the Content Partnership Program (Doc. 32-5 at 6, ¶ 28), Porn.com has
10  contracted with United States advertisers to engage in geo-targeted advertising aimed at
11  United States users (Doc. 16, ¶ 15), Porn.com uses a United States hosting company and
12  CDNs to provide faster service to Unites States users (Doc. 51 at 8), Porn.com has a
13  United States DMCA agent (*id.*), and Porn.com's largest user block consists of – not
14  surprisingly in light of these other actions – United States users (*id.*).  When considered
15  as a whole, these actions show that Porn.com "anticipated, desired and achieved a
16  substantial [United States] viewer base" with the intent of commercial gain.  *Mavrix*, 647
17  F.3d at 1230.  AMA has satisfied the "express aiming" element of purposeful direction.

18                         **c.    Harm in the Forum.**

19    AMA must also show that Porn.com knew it was causing harm likely to be
20  suffered in the United States.  This "element is satisfied when defendant's intentional act
21  has 'foreseeable effects' in the forum," and can even be established if "the bulk of the
22  harm occurs outside of the forum."  *Brayton*, 606 F.3d at 1131.

23    AMA is a United States company with its principle place of business in Nevada.
24  Doc. 16, ¶ 28.  AMA's primary business model involves providing access to its
25  copyrighted works to paid members of AMA websites.  *Id.*, ¶ 30.  AMA engages in
26  limited licensing and provides a small sample of promotional materials to affiliates for
27  the purpose of promoting AMA's products.  *Id.*  AMA alleges that Porn.com placed at
28  least 64 AMA copyrighted works on more than 100 Porn.com-affiliated URLs.  *Id.*, ¶ 78.

1  Sagan concedes that "when the bad act occurred in espace and did not specifically target
2  any user, the harm is deemed to have been suffered where the corporation maintained its
3  principle place of business." Doc. 42-1 at 13 (citing *Panavision Int'l , L.P. v. Toeppen*,
4  141 F.3d 1316, 1322 (9th Cir. 1998)). Therefore, "[a]ny alleged harm suffered by AMA
5  was in Nevada." *Id.*

6       Given these considerations of intentional action, aimed at the United States, and
7  causing harm in the United States, the Court finds that AMA has made a prima facie
8  showing of purposeful direction under the effects test. *See Mavrix*, 647 F.3d at 1232.

9                    **2.    Arising Out Of Defendant's Forum Related Conduct.**

10      A claim arises out of a defendant's forum-related activities if the plaintiff "would
11  not have been injured 'but for'" the defendant's contact directed at the forum.
12  *Panavision*, 141 F.3d at 1322. The "but for" test "preserves the requirement that there be
13  some nexus between the cause of action and the defendant's activities in the forum."
14  *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other*
15  *grounds by* 499 U.S. 585; *see also Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1052 n.7
16  (9th Cir. 1997) ("Although *Shute* has been questioned, the 'but for test' remains viable.").

17      AMA has alleged substantial contacts between Porn.com and the United States,
18  showing that Porn.com anticipated, desired, and achieved a substantial United States
19  viewer base with the intent of commercial gain. Porn.com's alleged infringement of
20  AMA's copyrighted works would serve only to further the purpose of growing United
21  States viewership for commercial gain. What is more, Porn.com specifically targeted
22  AMA's content, knowing AMA was a United States company protected by United States
23  copyright laws, and proceeded to post that content in the United States, where AMA is
24  attempting to make business use of its copyrighted material. The Court concludes that
25  "but for" Porn.com's deliberate business practices, including the many contacts with the
26  United States described above, AMA would not have suffered the copyright violations
27  alleged in the complaint. *See Mavrix*, 647 F.3d at 1228 (finding a plaintiff's copyright
28  claim to arise out of the defendant's publication of the infringing material on a website

1   accessible to users in the forum); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,
2   1021 (9th Cir. 2002) (concluding plaintiff's claims arose out of defendant's forum-related
3   activities where defendant's website injured plaintiff in its principle place of business and
4   where defendant specifically competed with plaintiff in the forum by targeting forum
5   consumers.)

### 3. Reasonableness.

7   The Court must ensure that the exercise of jurisdiction is reasonable – that it
8   comports "with 'fair play and substantial justice.'"  *Panavision*, 141 F.3d at 1322
9   (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  Where a defendant
10  has purposefully directed his activities at forum residents, he must present a compelling
11  case that the presence of some other considerations would render jurisdiction
12  unreasonable.  *Burger King*, 471 U.S. at 477.  Courts consider the following factors:
13  "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in
14  defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's
15  state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient
16  judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's
17  interest in convenient and effective relief; and (7) the existence of an alternative forum."
18  *Rio*, 284 F.3d at 1021 (citation omitted).  No single factor is dispositive.  *Id.*

19  First, as discussed above, Porn.com has made substantial interjections into the
20  United States, which is the relevant forum under Rule 4(k)(2).  Sagan's only argument on
21  reply is that it has no offices, employees, property, or conduct within the United States.
22  Doc. 60 at 8.  But as an owner/operator of Porn.com, Sagan has interjected itself by
23  engaging in contractual relationships with United States companies and advertisers to
24  directly target the United States market for commercial gain.  The first factor weighs in
25  favor of reasonableness.

26  The second factor, at best, is neutral.  Sagan argues it is based thousands of miles
27  from the forum, in Seychelles, and that witnesses required for this action are located in
28  Barbados.  *Id.*; Doc. 42-3, ¶ 9.  In response, AMA asserts "the relevant employees and

1  witnesses resided in Canada." Doc. 51 at 15. It appears that most of the relevant

2  witnesses will be in Canada. Sagan has not shown that defending against this action is

3  significantly harder than defending against an action in Barbados, where Sagan and other

4  Defendants have sued AMA.

5        The third factor favors reasonableness. Sagan argues that "the forum of Sagan,

6  Seychelles, has a far more compelling interest in regulating its behavior." Doc. 42-1

7  at 15. The Court disagrees. Sagan's alleged infringement of AMA material, protected

8  under United States copyright law, arose out of Sagan's substantial contacts directed at

9  the United States for commercial gain. What is more, Sagan has not sued AMA in the

10  Seychelles, but in Barbados. Given the statutory rights at issue in this case and Sagan's

11  own choice of forum, the Court cannot conclude that exercising jurisdiction over this

12  dispute would conflict with the sovereignty of Seychelles.

13        The fourth factor weighs in favor of reasonableness. The United States has a

14  significant interest in resolving disputes of United States copyright law involving

15  infringement by foreign defendants. Sagan argues that "Arizona has very little interest in

16  adjudicating this dispute" (Doc. 60 at 8), but Arizona's interest is not the proper inquiry

17  under Rule 4(k)(2). *See Holland Am. Line Inc.*, 485 F.3d at 461 ("[T]he due process

18  analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis

19  with one significant difference:" the relevant forum is the entire United States). And if

20  Sagan has sufficient contacts with the United States to satisfy Rule 4(k)(2), it has not

21  suggested a United States forum for adjudicating this matter that has a greater interest

22  than Arizona.

23        The fifth factor is neutral. Sagan argues that it did not conduct infringing actions

24  in Arizona. Doc. 42-1 at 15. Sagan also argues that the Barbados Action involves an

25  overriding contractual issue. *Id.* AMA argues that the allegedly infringing videos were

26  served from a CDN located in Arizona. Doc. 51 at 15. The Court is not convinced the

27  contract at issue in the Barbados Action applies to this case (*see* Doc. 64), and cannot

28  conclude that Barbados would be a more efficient forum.

1      The sixth factor favors reasonableness. Sagan notes that no party is located in

2 Arizona; AMA argues that Arizona is the location of the CDN servers. Docs. 42-1 at 15,

3 51 at 15-16. The relevant forum under Rule 4(k)(2), however, is the United States, AMA

4 is located in the United States, and the United States clearly has an interest in convenient

5 and effective relief of disputes concerning its copyright laws.

6      The seventh factor also weighs in favor of reasonableness. Sagan argues that

7 Barbados is the appropriate forum given the contractual defense Sagan intends to assert.

8 Doc. 42-1 at 15; Doc. 60 at 8-9. AMA contends that the CPRA does not govern the

9 conduct at issue in this case, and that it will be left with no remedy should the Barbados

10 court decide it does not have jurisdiction to address that claim. Doc. 51 at 16. For

11 reasons set forth in a previous order, the Court does not believe that the CPRA governs

12 this action and therefore does not view Barbados as the appropriate forum. Doc. 64.

13      In sum, Sagan has not presented a compelling case that this Court's exercise of

14 jurisdiction would be unreasonable. *See Burger King*, 471 U.S. at 477. AMA has

15 satisfied its burden of establishing a prima facie case of personal jurisdiction under

16 Rule 4(k)(2). Sagan's motion to dismiss for lack of personal jurisdiction will be denied.

17 **III.   Stay.**

18      Sagan's motion to stay is virtually identical to the motion to stay made by Sagan's

19 co-Defendants, Netmedia Services, Inc. and GLP 5, Inc. *Compare* Doc. 27-1 at 12-16,

20 *with* Doc. 42-1 at 12-16. The Court will adopt its corresponding analysis for denying the

21 motion to stay. *See* Doc. 64 at 8-11.

22      **IT IS ORDERED:**

23      1.    Sagan's motion to dismiss (Doc. 42) is **denied**.

24      2.    The motion to stay proceedings pending the outcome of the Barbados

25            action (Doc. 42) is **denied**.

26      Dated this 13th day of October, 2016.

27

28

                                       David G. Campbell
                             United States District Judge

# EXHIBIT B

# Statement of Claim, Barbados Filing





**SUPREME COURT OF BARBADOS**

**IN THE HIGH COURT OF JUSTICE**

**CLAIM NO.  CV 600/2016**

**BETWEEN:**

**CYBERWEB LTD**

**NETMEDIA SERVICES INC**

**SAGAN LTD**

**GLP 5 INC**

**GIM CORP**

**DAVID KOONAR**

**CLAIMANTS**

**AND**

**AMA MULTIMEDIA LLC**

**ADAM SILVERMAN**

**DEFENDANTS**

## STATEMENT OF CLAIM

1. The Claimants collaborate to carry on business online on the world-wide-web.

    1.1 The First Claimant, Cyberweb Ltd, is an International Business Company incorporated in Barbados and licensed under the International Business Companies Act CAP   of the Laws of Barbados and having its registered office situate at Coconut Creek House, Derricks in the parish of Saint James in Barbados.

    1.1.1 Cyberweb Ltd is in the owner and/or operator of one or more Internet web sites, which provide inter-alia specific types of entertainment formatted for a defined category of users.



1.2    The second named Claimant, Netmedia Services Inc., is a limited liability company incorporated in Canada and which has its registered office situate at 5060 Tecumseh Road East, Windsor, Ontario Canada.

1.2.1   Netmedia has a technical services agreement with Cyberweb Ltd. pursuant to which it provides certain general services pertaining to maintenance and operation of Cyberweb Ltd. websites

1.3    The Third named Claimant, Sagan Ltd., is a company incorporated in the Seychelles and has its registered office situate at Suite 9 Asuya Estate, Revolution Avenue, Victoria Mahe in the Seychelles.

1.3.1   Sagan Ltd. is the legal owner and/or operator and/or operator of one or more internet web sites which provide inter-alia specific types of entertainment formatted for a defined category of users.

1.4    The Fifth named Claimant, GIM CORP, is an International Business Company incorporated in Barbados and licensed under the International Business Companies Act CAP   of the Laws of Barbados and having its registered office situate at Coconut Creek House, Derricks in the parish of St James in Barbados.

1.5.1   GIM Corp is an aggregator of content for use on websites. It obtains such content from third parties by purchase or license for distribution via the websites owned and/or operated by the other Claimants as stated herein.

2.  On or about the 10th day of September, 2012 GIM Corp entered into an agreement titled "Content Partner Revenue Sharing Agreement" (hereafter "RSA") with the Defendants whereby the Defendants agreed to provide certain web content for distribution by GIM Corp and its affiliates on websites owned and/or operated by the Claimants as hereinbefore stated at paragraph 1.

2.1 The RSA was entered into in the following manner:
- (i)    On the 10th September 2012 at 00:49:09 a.m. the Defendants made an online application for an account with GIM Corp from the IP address 110.142.72.225;
- (ii)   GIM Corp sent to the Defendants an Email confirmation on 2012-09-10 00:49:29 of the Defendants' request for the account from the IP address 110.142.72.225;
- (iii)  The opening of the account was approved by GIM Corp on the 2012-09-10 at 09:07:36 a.m.

(iv)   The contract was entered into by the Defendant 2012-09-10 at 20:54:40 p.m. by the Defendant logging in and accepting the terms of the contract by utilizing a click through acceptance on the internet.

3.   The RSA formed an integral part of GIM Corp "Revenue Sharing Program" created and operated by the Claimant GIM Corp.

3.1 Agreeing to the RSA was a condition precedent to participation in that Revenue Sharing Program. If the Defendant/customer did not agree to the RSA they were not given access to the revenue sharing program and could not upload their content or materials.

4.   In consideration thereof the Defendants became part of the GIM Corp Revenue Sharing Program and entitled to share in certain of the revenues generated under that Program.

4.1 The RSA and Revenue Sharing Program allowed for the Defendant content owners who had agreed to license their content under the RSA to provide content to GIM Corp and, in exchange for permitting GIM Corp to distribute such content to receive a percentage of certain advertising revenues earned in connection with the display of such content on various websites, including those owned and/or operated by one or more of the other Claimants including the websites referred to in paragraph 1 herein.

4.2 The RSA specifically provided the Licensee and its affiliates thereunder the right to make available for stream or download content provided by the Licensor. Such rights are articulated in the definition of the Purpose of the RSA, which recites as facts the following:

Clause B "Licensee (here, Defendants) desires to provide the Content to end users of a single/(group of) website(s) (the "Website(s)") on the Worldwide Web, who's advertisements are controlled by the Traffic Force Advertising Management System, ("Traffic Force"), at which Licensee can stream and provide downloading of video and audio Content over electronic devices, including without limitation desktop and laptop computers, handheld receivers and wireless phones, to end users. (the "Purpose"). "

Clause C "Licensor desires to make the Content available to Licensee for use on the Website(s) in order to be eligible to take part in the Content Partner Advertising Revenue Sharing Program (currently located on http://www.paidperview.com), and obtain compensation therewith. "

4.3 The defined term "Websites", as provided above, "includes those websites on the worldwide web, whose advertisements are controlled by the Traffic Force Advertising

Management System, ("Traffic Force"), at which Licensee can stream and provide downloading or video and audio content over electronic devises...(the "purpose")"

4.4 Each of the Claimants, including Cyberweb Ltd., Netmedia Services Inc., and Sagan Ltd. derive benefits under the RSA, including as follows:

    4.4.1   The website(s) owned/controlled by Cyberweb Ltd. (and any other Claimant) is supported by an advertising management system - Traffic Force;

    4.4.2   SAGAN LTD provides services to and for the benefit of Cyberweb Ltd., including, without limitation, domain name management services.

    4.4.3   Claimant Netmedia Services Inc. provides technical programming, design and other services, which may be related to the uploading of content to websites that are supported by an advertising management system - Traffic Force for the benefit of Traffic Force, GIM Corp., SAGAN Ltd., and Cyberweb Ltd.; and,

    4.4.4   GIM CORP. owns and operates the Revenue Sharing Program pursuant to which customers, including Defendants, who have agreed to the RSA participate and pursuant to which such customers, including Defendants, benefit from revenues generated from advertisements appearing on the websites owned and/or operated by Claimants which are supported by an advertising management system - Traffic Force.

5. Subsequent to consenting to the RSA and the creation of their account the Defendants accessed their account using their identification and password and repeatedly uploaded content and received payment for same pursuant to the RSA.

5.1 The Defendants and each of them have uploaded content and received payments under the RSA and they continue to do so. The Defendant or either of them continue to upload content to the Claimants websites and last logged on and uploaded content on the 25th May 2016.

6. The RSA to which the Claimants will refer as may be necessary for its full terms, meaning and effect, expressly provided inter-alia as follows:

    10.5 Choice of Law. This Agreement shall be governed by and construed in accordance with the laws of Barbados, without regard to conflicts of law principles. Any legal action arising out of or relating to this Agreement must be instituted in a court in Barbados and the parties submit to the jurisdiction of any such court. .... If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall not be affected or impaired thereby".

1. Grant of Licence

1.1   Subject to the terms and conditions set forth in this Agreement, with respect to any and all Content that Licensor submits or provides to Licensee, Licensor grants Licensee a non-exclusive, nontransferrable worldwide license during the Term to use, publish, display, and distribute the Content on the Web site(s), solely for the Purpose.

1.2   Subject to the terms and conditions set forth in this Agreement, Licensor grants Licensee the right to use Licensor's Brand Names and Trade Names for the purpose of the promotion of the Content on the Websites and/or the Program, in advertisements, and press releases. Any such advertisements or press releases shall be made in the sole and absolute discretion of Licensee.

2. Term and Termination

2.1   Unless terminated earlier pursuant to this Agreement, the term of the Agreement ("Term") shall be for an initial period of one (1) calendar month commencing on the Effective Date. After the expiration of the initial period, or any subsequent Term, this Agreement shall renew for an additional one (1) month period, in perpetuity, unless either party gives notice to the other prior to the expiration of the initial period, or any subsequent Term, of its intention to terminate this Agreement on that expiration date.

6.1 The Content covered under the RSA includes content that is submitted or provided. The breadth of content and sources is further referred to and provided for in clauses 3.9, 4.1, and Exhibit A of the RSA which provide for content that is not submitted directly by the Licensor. Exhibit A also sets out the minimum requirements for content and which expressly includes high resolutions images, high resolution Box Art, fact sheets, a list of actors in each scene etc.

6.2 The RSA further grants the Claimant GIM Corp the right to use such content in any manner co consistent with the "Purpose" which is stated in Background, Paragraph B of the RSA to be to "stream and provide downloading of video and audio Content over electronic devices, including, without limitation, desktop and laptop computers, handheld receivers and wireless phones, to end users."

6.3 Paragraph 1.3 of the RSA grants a broad license to use the brand names and trade names of the customer, including the Defendants, for the purpose of promotion of the Content on the Website(s) and/or the Program, in advertisements and press releases and that any such use shall be made in the sole and absolute discretion of the Claimant GIM Corp.

Paragraph 5.1 reasserts that the Claimant GIM Corp has sole and absolute discretion as to the manner and methodologies applied in maintaining and promoting the Website(s).

6.4 Paragraph 3.2 of the RSA defines the advertising revenues to be shared and is limited to advertisements actually appearing on the Websites.  There is no provision for any other revenue sharing.

6.5 Paragraph 6.1 includes a representation and warranty by Defendants stating that "Licensor shall not at any time during the Term of this Agreement do anything or authorize other parties to do anything contrary to the rights licensed to Licensee under this Agreement."

6.6 Paragraph 7.3 contains an express limitation of liability provision, which excludes consequential, incidental, special or indirect damages, unless otherwise prohibited by Bardbados law.

6.7 Paragraph 9 contains a comprehensive confidentiality provision pursuant to which confidential information received from the other must be held in strict confidence.

6.8 Paragraph 10.3 provides that the rights of GIM Corp under the RSA are freely assignable without need of notice or consent.

6.9 Paragraph 10.8 provides that ambiguities shall not be construed against GIM as the drafting party.

6.10     Having regard to the express provisions for Choice of Law under the RSA the Claimants are entitled to and do claim that the RSA is entirely and solely justiciable only in Barbados and that the issue of jurisdiction be determined as a preliminary issue.

7.  The Defendants never terminated the RSA and it remained in full force and effect at all material times and the Claimants repeat paragraph 6 hereof.

8.  On or about April, 2016 the Defendants threatened in writing to issue a claim in the USA against the Claimants and each of them, alleging infringement of copyright of content materials, brand names and trademarks provided to the Claimants pursuant to the RSA unless the Claimants' paid them the sum of US$.2,000,000.00.

9.  In breach of the RSA and in particular clause 6.1 and 10.5 thereof the Defendants have since commenced that suit.

9.1 The Defendants have also filed a Notice of Application with Certificate of Urgency in this suit stating at paragraph 6 of the Certificate of Urgency that they filed suit in the state of Arizona, USA and exhibited a copy (KP 1) of the claim as filed. This action CV 600/2016 was filed on 27 April, 2016. The Defendants suit said to have been filed in Arizona USA was stated as having been filed on 28 April, 2016.

10. By virtue of the Defendants threatened and actual breach of the RSA the Claimants have suffered and are continuing to suffer loss and damage including but not limited to incurring of costs the particulars whereof shall be served prior to or at Case Management for which the Claimants are entitled to and do claim damages together with interest including interest pursuant to section 35 of Cap 117A at such rate and for such period deemed fit.

11. By virtue of the Defendants threatened and actual breach of the RSA the Claimants have suffered and are continuing to suffer loss and damage occasioned by the Defendants' actions and consequential uncertainty as to the Claimants' rights to direct or indirectly use, publish, display and/or distribute the content pursuant to the RSA.

In the premises the Claimants are entitled to and claim the following declaratory and other relief:

i.     A Declaration that the RSA made between GIM Corps and the Defendants herein on 10th September, 2012 is entirely and solely justiciable only in the Courts of Barbados.

ii.    A Declaration that all of the Claimants herein are entitled to rely on the rights granted by the Defendants to GIM Corp under the RSA.

iii.   A Declaration that all of the Claimants herein are entitled to publicize and or distribute Content materials including copyright content materials provided by the Defendants to GIM Corp under the RSA.

iv.    Injunctive relief to restrain the Defendants from taking any further step whatsoever in the proceedings which it has commenced in the United States of America until determination of this suit.

v.     Damages for loss and damage suffered by the Claimants occasioned by the Defendants threatened or actual breach of the RSA

vi.    Interest pursuant to section 35 of Cap 117A at such rate and for such period deemed fit;

vii.   Costs including contractual costs pursuant to the RSA.

viii.  Further or other relief deemed fit.

CERTIFICATE OF TRUTH

I Kristen Richardson director of Cyberweb Ltd certify that all facts set out in this Statement of Claim are true to the best of my knowledge, information and belief and that I am duly authorized to make this statement on behalf of all of the Claimants.

Dated the   *09*   day of   *June* 2016

*Claimant's signature*



Barbados

CERTIFIED A TRUE COPY

LEGAL ASSISTANT

A-9