**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hydentra HLP Int. Limited and Hydentra LP HLP General Partner Incorporated,<br><br>Plaintiffs,<br><br>v.<br><br>Sagan Limited, MXN Limited, Netmedia Services Incorporated, and David Koonar,<br><br>Defendants. | No. CV-16-01494-PHX-DGC<br><br>**ORDER** |

Plaintiffs Hydentra HLP Int. Ltd. and Hydentra LP HLP General Partner Incorporated (collectively "Plaintiffs") are companies organized under the laws of the Republic of Cyprus and the producers of pornographic material. In this case they assert claims for copyright infringement against several foreign entities and one individual associated with the website Porn.com. Defendants Sagan Limited; MXN Limited ("Cyberweb"); Netmedia Services, Inc.; and David Koonar are residents of Seychelles, Barbados, Canada, and Canada respectively. Defendants have filed three independent motions to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Docs. 35, 36, 37. Additionally, Defendants Netmedia and Koonar move to dismiss Plaintiffs' claims under Rule 12(b)(6). Docs. 36, 37. The motions are fully briefed. Docs. 35, 36, 37, 38, 44, 45, 53, 60, 61. Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid in the Court's decision. *See* Fed.

R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). For the reasons that follow, the Court will grant Defendants' motions to dismiss.

**I.    Background.**

The following facts are taken from Plaintiffs' complaint and are assumed true for the purposes of this motion.

The website Porn.com is a video streaming website that generates revenue through premium memberships and advertising. Doc. 1, ¶¶ 39-40. Defendants Sagan, Cyberweb, Netmedia, and David Koonar are each owners and/or operators of Porn.com. *Id.*, ¶ 38.[1]

Porn.com receives a significant portion of its web traffic from the United States. *Id.*, ¶ 47 (Plaintiffs allege 63.1 million visits per month, 21.43% of which are from the United States). Defendants sell advertising space on Porn.com in several forms, including banners and links in close proximity to videos, often targeted to the user's location. *Id.* ¶ 48. Defendants advertise that "HD Premium members receive 'Stunning High Definition Video,' 'Browse 100% Ad-Free,' and can 'Download videos, DVDs, and pictures to keep.' In addition, Defendants advertise that Premium Members get access to the 'best sites and studios in HD.'" *Id.*, ¶ 52.

Plaintiffs assert that Defendants engage in a practice called "scraping," by which entities "aggregate on their own, user information and videos from other websites, then create a façade that those users exist on their own website and upload[] the videos to [their] websites directly." *Id.*, ¶¶ 58-59, 69. Scraping "allows a site to provide more high quality video content to their end users while maintaining the appearance that an army of third parties uploaded a vast library of professionally shot content in a concentrated period." *Id.*, ¶ 59.

In November 2015, Porn.com displayed four of Plaintiffs' copyright registered works over four separate Porn.com URLs. *Id.*, ¶ 65. The infringing videos were purported by Defendants to have been uploaded by third party internet users. *Id.* "Three

---

[1] Defendants concede that Cyberweb and Sagan are owners/operators of Porn.com, but argue that Netmedia and David Koonar are unrelated entities with whom Cyberweb and Sagan merely happen to have a subcontractor relationship. Docs. 35 at 4-5.

of Plaintiffs' videos posted on Porn.com are accompanied by a user name represented to be the uploader" of the video, but a search on Porn.com for these user names resulted in a report that "there is 'No Such Member' or user on Porn.com." *Id.* Plaintiffs contend that this report supports the allegation that Defendants engage in "scraping" and that Defendants, not a purported third party, are liable for the infringing acts. *Id.*, ¶¶ 60-74, 90-92. Plaintiffs allege four counts: (1) copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, and (4) inducement of copyright infringement. *Id.*, ¶¶ 75-128.

## II. Personal jurisdiction.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, but factual disputes are resolved in Plaintiff's favor. *Id.*

Plaintiffs assert that each Defendant is subject to personal jurisdiction pursuant to Rule 4(k)(2). Doc. 1, ¶¶ 1-24; Docs. 38 at 5, 44 at 6, 45 at 11. Rule 4(k)(2) provides that a court may exercise personal jurisdiction over a defendant if (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state court of general jurisdiction, and (3) exercising jurisdiction is consistent with the United States Constitution. Fed. R. Civ. P. 4(k)(2).

Defendants concede that the first and second factors are satisfied. *See, e.g.*, Doc. 36 at 6. The first factor is satisfied because Plaintiffs assert claims of copyright

infringement under federal law. The second factor is satisfied because no Defendant "concede[s] to jurisdiction in another state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (citation omitted). Thus, the Court need only assess the third factor. *Id.* at 462.

Analysis under the third factor – the due process analysis – "is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Id.* at 462. The question, then, is whether Defendants have sufficient minimum contacts with the United States so that maintenance of the suit here does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). A court must consider whether (1) the defendant purposely directed conduct at the forum, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Mavrix*, 647 F.3d at 1227-28.

In a previous case before this Court, involving the same plaintiffs' counsel and Defendants, the Court conducted this Rule 4(k)(2) jurisdictional analysis as to Defendant Sagan. *AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 WL 5946051, at *3-8 (D. Ariz. Oct. 13, 2016) ("*AMA*"). The Court found that Sagan engaged in purposeful direction at the United States, and that the Court's exercise of personal jurisdiction over Sagan was reasonable. *Id.* In their motion, Defendants directly address the *AMA* decision, and contend that in this instance, "different facts, additional facts, and a different Plaintiff compel a different result." Doc. 35 at 14. Plaintiffs argue that "Defendants' Motion is in bad faith, as this very Court already asserted personal jurisdiction over Porn.com owners/operators in [the *AMA* decision]." Doc. 38 at 2.

### A. Purposeful Direction.

The first required element of specific jurisdiction, "purposeful direction," is satisfied when a defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in the forum. *Mavrix*, 647 F.3d at 1227-28.

- 4 -

This test is sometimes referred to as the "effects test." *Id.* The effects test does not "stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citation and quotation marks omitted). Nor does the effects test mean that specific jurisdiction may be based solely on a defendant's knowledge that the subject of his tortious activity resides in a particular state. *See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). The Court must always focus on the "relationship among the defendant, the forum, and the litigation [which] is the essential foundation of in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.

### 1. Intentional Act.

Plaintiffs must show that Defendants committed an intentional act. Plaintiffs allege that the operators of Porn.com engaged in the "improper collection and distribution of Plaintiffs' copyrighted works" and "actively uploaded and/or distributed pirated copyrighted files and/or embedded code, enabling users of Porn.com to view copyrighted videos and images for free." Doc. 1, ¶¶ 84, 86. Plaintiffs allege that Defendants engaged in the process of "scraping" to conceal their nefarious acts. *Id.*, ¶¶ 58-70. Plaintiffs cite the following specific instance in support of their claims:

> One of Plaintiff's videos posted on Porn.com displays a user name that appears to be a member of Porn.com, complete with a dedicated profile page that includes a date of birth, and date the user joined Porn.com. Curiously, *the Porn.com User has identical information found on a dedicated profile page on the website Xvideos.com. This information includes the same signup date to each site, and identical geographic location, and videos in identical order of presentation.* Attached hereto as **Exhibit C** is a summary list of the Porn.com member and the comparative on Xvideos.com.

*Id.*, ¶ 70 (emphasis in original).

Unlike in *AMA*, where Sagan made no express argument denying that it engaged in the act of uploading of AMA's pirated videos, Defendants categorically deny

Plaintiffs' allegations and insist that no such conduct has occurred. *See, e.g.*, Docs. 35 at 7, 36 at 4, 37 at 4. Defendants attempt to show that the instance Plaintiffs describe – where the same user seemingly posted the same video on multiple sites on the same day – is not suspicious at all, asserting that "there exist services on the internet that create profiles on many tube sites at once and upload the same video to all those websites at the same time, which would explain Plaintiffs' allegations." Doc. 35 at 10. Defendants may well be correct, but that is a factual question premature for a decision.

Because factual disputes are resolved in Plaintiffs' favor in this Rule 12(b)(2) motion, the Court will assume for purposes of this order that Defendants engaged in scraping to upload at least one of the infringing videos. This is a sufficient intentional act. *See Mavrix*, 647 F.3d at 1223.

### 2. Expressly Aimed at the Forum.

Plaintiffs must make a prima facie showing that the conduct of Defendants, as operators of Porn.com, is expressly aimed at the forum. In this instance, under a Rule 4(k)(2) analysis, the forum is the United States as a whole. *See Holland*, 485 F.3d at 461.

Courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix*, 647 F.3d at 1229. "[M]aintenance of a passive website alone cannot satisfy the express aiming prong." *Id*. But "operating a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient." *Id*. In determining whether "something more" exists, the Ninth Circuit considers a number of factors, including the "interactivity of the defendant's website," "the geographic scope of the defendant's commercial ambitions," and "whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id*.

A defendant expressly aims at a forum when he engages in conduct to exploit the forum market for commercial gain. *See Id.* In *Mavrix*, the Ninth Circuit conducted a purposeful direction analysis to evaluate whether the operator of a celebrity website

established sufficient contacts with the state of California when it published copyrighted celebrity photos online. *Id*. at 1228-1232. The court found that the website operator had engaged in express aiming at California. *Id.* The court noted that the website sold advertising space to third-party advertisers who targeted California and that a substantial number of hits to the website came from California. *Id.* The "most salient" fact in favor of express aiming was "that [the website] featured [the plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1230.

Like the website operator in *Mavrix*, whose expressly-aimed conduct included making money based on advertising and website traffic from users in California, Defendants earn revenue based on advertising and website traffic in the United States. In fact, Plaintiffs allege that between January 2016 and June 2016, United States residents were the largest source of Porn.com users, comprising 23.26% of Porn.com's viewers. Doc. 38-1 at 7, 53. German residents made up the second largest source at 7.99%. *Id.* Additionally, at the time of the alleged infringement, Porn.com was hosted by a Massachusetts company, Reflected Networks, and utilized a Content Delivery Network ("CDN") comprised of severs located in Arizona and throughout the United States. *Id*. Plaintiffs also allege that Porn.com claims relationships with at least eleven United States content producers through its Content Partnership Program, including three Arizona-based companies – Oppenheit, LLC; XFC, Inc.; and Nomad Media, Inc. *Id*.; Doc. 32-5 at 6, ¶ 28. Furthermore, Plaintiffs allege Porn.com that contracts with United States advertisers to reach United States users with geo-targeted advertisements. *Id*.

Defendants argue that a number of facts distinguish this case from *AMA*. Defendants assert that (1) maintenance of a website is not sufficient to establish express aiming at a forum; (2) Defendants do not engage in contracts with U.S. advertisers or advertising brokers and do not engage in "geolocation"; (3) only one Defendant, Sagan, contracts with a third party for server space for the Porn.com website, and that contract is with a company located in the Netherlands, not the United States; and (4) "to the extent

there are 'content partners' who provide videos that appear on the Porn.com website, it is not as a result of Defendants entering into agreements with such content partners, but rather the result of those content providers entering into agreements with [GIM]." Doc. 35 at 15-24. Defendants also contend that, to the extent the Court considered the fact that Porn.com has a registered agent for the receipt of takedown notices with the United States Copyright Office, such consideration was improper. *Id.* at 24-27.

Defendants' arguments are largely unpersuasive. Defendants' contentions (2), (3), and (4) – which claim that no Defendant contracts directly with United States entities – present factual arguments, not legal ones. While the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), factual disputes are resolved in the plaintiff's favor, *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). Plaintiffs allege that Porn.com's servers are hosted in the United States (Doc. 38 at 9-10), that Porn.com contracts directly and through brokers with United States advertisers who tailor their ads to the end user's geographic location in the United States (Doc. 1, ¶ 15), and that the United States market makes up a substantial portion of Porn.com's traffic (Doc. 38 at 9-10; Doc. 38-1 at 7, ¶ 32), and these factual arguments must be settled in Plaintiffs favor at this stage.

Defendants' first and fifth contentions, on the other hand, assert legal arguments. *See* Doc. 35 at 15-21, 24-27. Defendants first argue that maintenance of a website is insufficient to establish express aiming at a forum. *Id.* at 15. Defendants are correct. It is well settled law that maintenance of a website alone is not sufficient. *See, e.g.*, *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Cybershell, Inc. v. Cybershell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997). But the Ninth Circuit's decision in *Mavrix* makes clear that "operating a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient." 647 F.3d at 1229. Defendants do not address the factors in *Mavrix* that the Court considers when determining if "something more" exists, including the interactivity of the defendant's

website, the geographic scope of the defendant's commercial ambitions, and whether the defendant individually targeted a plaintiff known to be a forum resident. *Id*. Nor do Defendants address how the Court should step around the fact that the "most salient" factor is "the fact that [the owner/operators of Porn.com] used [Plaintiffs'] copyrighted [content] as part of its exploitation of the [United States] market for its own commercial gain." *Id.*

Instead, Defendants cite to numerous out-of-circuit decisions applying different rules and ultimately reach a different conclusion. These decisions are not relevant in light of the Ninth Circuit decision in *Mavrix*. *See* Doc. 35 at 15-21.

Defendants final argument is well taken. The fact a DMCA agent is registered in the United States should not be considered when evaluating contacts for personal jurisdiction. *See Chipman, Ltd. v. Thomas B. Jeffery Co.*, 251 U.S. 373, 379 (1920) (holding that "[u]nless a foreign corporation is engaged in business with the state, it is not brought within the state by the presence of its agents."); *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 576 (9th Cir. 2011) ("[I]t is the corporate activities of the defendant, not just the mere designation of a statutory agent, that is helpful in determining whether the court has personal jurisdiction over the defendant," and "the degree to which a defendant is present in the forum is an important factor in determining personal jurisdiction. The simple act of appointing a statutory agent is not, nor has it ever been, a magical litmus test."). Even absent consideration of Porn.com's DMCA agent in Michigan, however, the other contacts with the United States alleged by Plaintiffs are sufficient to establish expressing aiming at the forum by the operators of Porn.com. *See Mavrix*, 647 F.3d at 1229.

### 3. Harm in the Forum.

This is where Plaintiffs' personal jurisdiction argument fails. To establish purposeful direction, Plaintiffs must show that Defendants knew they were causing harm likely to be suffered in the United States. This "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum," and can even be established if "the

bulk of the harm occurs outside of the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010). "In order to establish specific jurisdiction, a plaintiff must also show that jurisdictionally significant harm was suffered in the forum state." *Mavrix*, 647 F.3d at 1231.

> Plaintiffs devote a mere five sentences to this issue:
>
> While Hydentra is formed as a company in Cyprus, it operates from the U.S., employs U.S. citizens located in the U.S., pays U.S. taxes, and has registered its works with the U.S. Copyright Officer. *See*, **Exhibit B** at ¶¶9-13. Hydentra specifically and intentionally markets its paid membership web sites to U.S. viewers. *Id*. In fact, a majority of Hydentra's revenue is generated through U.S. members. *Id*. Hydentra's videos infringed on Porn.com were displayed in the U.S. for free – which obviously deters viewers from paying Hydentra's membership fees. *Id*.

Doc. 38-1 at 15. Plaintiffs cite no authority in support of their argument that such contacts are sufficient to show that they, as Cyprus corporations, were harmed in the United States, much less that harm to them in this country was foreseeable. Plaintiffs cite to a declaration of Jon Krogman, who identifies himself as the president of Plaintiffs, but his declaration similarly lacks detail. He asserts without elaboration and without citation to any supporting source that Plaintiffs operate predominantly in California, employ United States citizens, pay taxes in the United States, actively promote their membership in the United States, and generate most of their revenue from this country. Doc. 38-2. Absolutely no details are provided.

Because this motion is decided on the papers, Plaintiffs need make only a prima facie showing of jurisdictional facts. Even still, the Ninth Circuit has explained that "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *see also Alperin v. Vatican Bank*, 410 F.3d 532, 539 n.1 (9th Cir. 2005) ("Even though a plaintiff need make only a prima facie showing of jurisdiction at this stage in a litigation, the Holocaust Survivors' bare-bones assertions that the Croatian Liberation Movement has been 'active' within the United States at some point and at least a few members have ties to this country are

insufficient for us to conclude that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.") (quotation marks and citations omitted); *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("nonspecific conclusory statement" not enough to show minimum contacts). Plaintiffs provide only bare bones assertions of their business activities in the United States. Doc. 38-2.

The Court may, however, consider facts submitted by Defendants if they are uncontroverted. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) ("we may consider the defendant's undisputed factual assertions"); *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) ("facts put forward by the defendant become part of the mix only to the extent that they are uncontradicted") (quotation marks and citation omitted). Here, Defendants present unrebutted evidence that seriously undermines Plaintiffs' assertions of significant business operations in the United States. The address Plaintiffs provide on their United States Copyright Registration – 18034 Ventura Blvd., Suite 181, Encino, California – is nothing more than a mail drop belonging to "Encino Mail & More." *See* Doc. 53 at 11; Doc. 53-3 at 2-9. Further, the California Secretary of State does not list any domestic or foreign entity in California operating under the name Hydentra. *See* Doc. 53-3 at 11-17. Nor is Hydentra registered as an entity in Arizona or Nevada. *Id.* And while Plaintiffs claim to pay U.S. taxes, Hydentra has had its registrations cancelled at least twice for failure to pay taxes. Its Texas registration was cancelled in 2010 for failing to pay taxes, and its Delaware registration was cancelled in 2011 for the same reason. *See* Doc. 53-3 at 19-23.

What is more, as noted above, "a plaintiff must also show that jurisdictionally significant harm was suffered in the forum state." *Mavrix*, 647 F.3d at 1231. Plaintiffs say nothing of this requirement. They make no attempt to show the significance of the harm to them in the United States. This case concerns four of Plaintiffs' videos shown in November 2015. Doc. 1, ¶ 65. The Court cannot conclude, however, that this constitutes jurisdictionally significant harm. Porn.com hosts some 500,000 videos. Doc. 35 at 3 n.4.

Plaintiffs do not provide a number for the videos they produce regularly, but note that they "produce new films monthly." Doc. 38-2, ¶ 5. Without any further evidence, the Court cannot conclude that Plaintiffs have shown that Defendants' alleged actions foreseeably caused them jurisdictionally significant harm. *Mavrix*, 647 F.3d at 1231.

In short, unlike the plaintiff in *AMA*, which was a United States corporation based in Nevada, Plaintiffs are foreign corporations based in Cyprus. *See* Doc. 1. Plaintiffs have provided no more than bare bones assertions to support of the claim that they have operations in the United States or that the foreseeable harm to them in the United States was jurisdictionally significant. Accordingly, the Court finds that, even assuming that the operators of Porn.com intentionally acted in a manner targeting the United States, Plaintiffs have not sufficiently shown that foreseeable harm occurred to them in the forum. *See Brayton*, 606 F.3d at 1131.

### B.     Summary.

Plaintiffs have failed to show that foreseeable harm occurred in the forum as a result of Defendants' conduct giving rise to this suit, and therefore have failed to satisfy the purposeful direction element of personal jurisdiction analysis. *See Mavrix*, 647 F.3d at 1227-28. Accordingly, the Court lacks personal jurisdiction over all Defendants and will grant the motions to dismiss. The Court need not address arguments that Netmedia and Koonar are not owners or operators of Porn.com, nor that Plaintiffs' complaint fails to state a claim against them.

**IT IS ORDERED**:

1.     Defendants' motions to dismiss (Docs. 35, 36, 37) for lack of personal jurisdiction are **granted**.

2.     The clerk is directed to terminate this case.

Dated this 17th day of July, 2017.

_____
David G. Campbell
United States District Judge